## MCPHERSON *et al. v.* JULIUS *et al.*

1. Comp. Laws 1887, § 5093, provides that the court or judge may, "upon
good cause shown," in furtherance of justice, extend the time within
which a bill of exceptions may be settled, etc., after the time limited
therefor has expired, and fix another time within which such act may
be done. Held, that the court's power to fix another time within which
a bill of exceptions might be settled after the 60 days prescribed there-
for had expired was limited to cases where good cause was shown, and
that the exercise of such authority was, therefore, subject to review by
the supreme court.

2. On April 1, 1899, the court announced its decision in favor of plaintiffs, and the findings and judgment were formally signed on June 24th. On July 26th defendants gave notice of their intention to move for a new trial, and on August 25th the court granted defendants' attorneys, an additional 60 days within which to settle the bill of exceptions. The last of the transcript was delivered to defendants' attorneys on the 20th of October, 1900, but no additional time was granted for the preparation of the bill of exceptions until May 13, 1901, when the court, on an application reciting that the delay had been caused by negotiations for a settlement, granted defendants additional time within which to settle their bill of exceptions. The negotiations for a settlement, however, did not extend for more than two weeks, when they were terminated. Held, that no sufficient cause for the granting of such extension was shown.

3. Where, in an action to quiet title to a mining claim, defendants pleaded title by virtue of a particular location, and the answer was not amended, and no motion to amend was made in the trial court, defendants were not entitled to claim the ground in controversy for the first time on appeal under another location.

4. Where, in an action to quiet title to a mining claim, the court found that plaintiffs' claim, including the ground in controversy, was properly staked before the location under which defendants claimed became a valid claim, it was immaterial that at the time plaintiffs' claim was originally located one of the stakes marking one of the corners was bound to a tree by twigs, instead of being driven into the ground, as required by Comp. Laws 1887, § 2002.

5. Where it was not shown that the locators of plaintiffs' claim fraudulently located the same 650 feet in excess of the amount allowed by law, and others could easily have determined the boundaries of the claim to which such locators were entitled under their location, such location was invalid only as to the excess.

6. The location of a mining claim is of no validity until a discovery of ore is made within the lines of such claim and outside of the lines of any other valid existing lode location.

7. Where, at the time plaintiffs' mining claim was located, it contained 650 feet in length in excess of the amount allowed by law, but before a

discovery of ore was made by defendants in an adjoining location within its lines and outside the boundary lines of any other valid location plaintiffs' claim had been resurveyed, and the excess located under other names, and the boundaries properly marked as prescribed by statute, the defects in the original location of plaintiffs' claim were cured as against defendants.

8. Where a prior location was invalid as to an excess of 161 feet of ground, and the prior locator subsequently abandoned such excess, which was included in plaintiffs' claim as conflicting ground, plaintiffs' subsequent location immediately attached to so much of the conflicting ground as was within the lines of their subsequent location on a proper discovery of mineral being made.

9. In an action to quiet title to a mining claim, a judgment in a prior action to which plaintiffs were not parties was not binding on plaintiffs in so far as it established the validity of defendants' adjoining claim, including conflicting ground claimed by plaintiffs.

10. Where there was no conflict between plaintiffs' mining claims and the P. claim, the fact that plaintiffs did not contest the granting of a patent to the owners of the P. claim did not justify the introduction in evidence, in an action between plaintiffs and the owners of the B. F. claim, which conflicted with plaintiffs' claim, of a judgment in an action between defendants and the owners of the P. claim, which decreed that the discovery of the B. F. lode was properly made within the lines of its own location as staked.

(Opinion filed June 3, 1903.)

Appeal from circuit court, Lawrence county; Hon LEVI McGEE, Judge.

Action by Donald A. McPherson and others against James Julius and others. From a judgment in favor of plaintiffs, defendants appeal. Affirmed.

*Frawley & Laffey,* for appellants.

A bill of exception may be settled after an appeal has been perfected. Implement Co. v. Porteous 7 S. D. 34; Coulter v. Ry. Co., 67 N. W, 1046; Hedlun v. Holy Terror M, Co., 85 N,

W. 861; McGillycuddy v. Morse 7 S. D. 592; Moe v. Railroad Co., 50 N. W. 715.

If the locator marks his claim with eight substantial posts hewed or blazed on side facing the claim and plainly marked with the name of the lode and corner, end or side of the claim which they respectively represent and sunk in the ground one at each corner and one at the center of each end and side line, he has sufficiently marked the boundaries of his claim no matter what the condition of the ground or its location may be. The only exception to this manner of marking is found in that provision of the statute which says: "When it is impracticable on account of rock or precipitous ground to sink such posts, they may be placed in monuments of stone." There must be a substantial compliance with this section in order to make a valid location and until there is, no location exists. Sec. 2002, C. L.; Croesus M. & S. Co. v. Col. Land & M. Co. 19 Fed. 78; Morrisson's Mining Rights, PP. 44 and 37; Patterson v. Tarbell, 37 Pac. 76; Marshall v. Harney Peak M. Co., 1 S. D. 360.

A locator owns only what his lines enclose and he in every instance marks out his claim at his peril. Iron S. M. Co. v. Elgin M. Co., 118 U. S. 196; Golden Fleece G. & S. Co. v. Cable Con. M. Co. 12 Nevada 312.

One who sells and conveys a thing cannot afterwards be heard to say that no title exists in the thing sold and the same estoppel applies to all his grantees. But if authorities are required they are numerous. McCarthy v. Speed, 11 S. D. 362; Stinchfield v. Gillis, 30 Pac. 839; Lebanon v. Con. Rep. M. Co. 6 Col. 372; Shreve v. Copper Bell M. Co., 28 Pac. 315; Weill v. Lucrene M. Co., 11 Nev. 200; Pilpot v. Blasdell, 4 M. Rep. 341; Stinchfield v. Gillis, 40 Pac. 98.

Where one innocently by mistake locates more than the law allows this does not render the entire claim void but the excess may be rejected unless rights previously acquired would be injuriously affected thereby.    15 Am. & Eng. Enc, of Law, Old Ed. Page 527, n. 2; Richmond M. Co. v. Rose 5 Sup. C. R. 1055; Houseworth v. Butcher, 4 Mont. 299; Doe v. Tyler, 73 Cal. 21; Stemwinder M. Co. v. Last Chance M. Co., 21 Pac. 1040; Burke v. McDonald, 33 Pac. 49; Hanson v. Fletcher, 37 Pac. 482.

The junior locator must subsequent to the abandonment or forfeiture of the conflict area by the senior locator, amend his location to include the overlapping surface; but without some act on his part manifesting an intention to make a new appropriation or acquire new rights after the abandonment or forfeiture became effectual, this area would not by mere gravity become part of the junior location.    Lindley on Mines, Vol. 1, P. 468; Pralus v. Pac. G. &. S. M. Co., 35 Cal. 30; Belk v. Meagher, 104 U. S. 279; Oscamp v. Crystal R. M. Co., 58 Fed. 293; Carthe v. Hart, 73 Cal. 541; Sutor v. McGuire, 78 Cal. 543; Armstrong v. Sower, 6 Col. 393; Johnson v. Young, 18 Col. 625.

It is not the province of a surveyor to locate a claim but to survey one already definitely marked upon the ground.    Lindley on Mines, Nol. 2, Sec. 671; Morrison's M. Rights, Page 347. The location of a mining claim as made and defined must control the rights of the claimants to the vein or lode.    The locator must stand upon his own location and can take only what it would give him under the law.    The courts cannot relocate his claim or make new side lines or new locations.    Lindley on Mines, Vol. 1, P. 472; King v. Mining Co. 152 U. S. 222.    The

lines of a location as made by the locator are the only lines that will be recognized.   The courts have no power to establish new lines or to make new locations.   Del Monte M. & M. Co. v. Last Chance M. Co., 18 Sup. C. R. 907; Lindley on Mines, Vol. 1, P. 485.

The original location certificate of the Little Pittsburgh contained no description whatever of the claim by reference to natural objects and permanent monuments sufficient to identify the claim with reasonable certainty as required by both federal and state statutes.   The effect of such an omission renders it void as against subsequent locators before its amendment.   Brown v. Levan, 46 Pac. 662; Kendall v. San Juan S. & M. Co., 12 Sup. C. R. 779; Hanmer v. Garfield, 9 Sup. C. R. 548; Faxion v. Bannerd, 4 Fed. 702; Gilpin v. Drake, 9 Pac. 987; Drummond v. Long, 13 Pac. 543; Gleason v. Martin White M. Co., 13 Nev. 442; Dague v. Lesieur, 30 Pac. 363; Flavin v. Mattingly, 19 Pac. 385; Brody v. Husley, 33 Pac. 901; Preston v. Hunter, 67 Fed. 996; Moyle v. Bulleen, 44 Pac. 71; Dillon v. Bayliss, 27 Pac. 725; Hanson v. Fletcher, 37 Pac. 480.

*McLaughlin & McLaughlin,* for respondents.

The statute provides, Section 5093, Compiled Laws: "The court or judge may, upon good cause shown, in furtherance of justice, extend the time in which any of the acts mentioned in sections 5083 and 5090 may be done, or may, after the time limited therefor has expired, fix another time within which any of such acts may be done.   This section has been construed in McGillicuddy v. Morris *et al,* 7 S. D. 592.   There must be some showing excusing the omission to do the act within the proper time.   Moe v. Railroad Co., 2 N. D. 82, 250 N. W. 715.   1 S. E. 337.

A claim located in excess of the amount allowed by law is void as to the excess only. 15 Am. & Eng. Enc. of Law 527; 20 Am. & Eng. Enc. of Law 695; Richmond Milling Co. v. Rose 114; U. S. 576; Atkins v. Hendree, 1 Idaho Ter. 107; Hansworth v. Butcher, 4 Mont. 299; Doe v. Tyler, 73 Cal. 21; Burke v. McDonald, 33 B. C. 49; Lakin v. Dolly, 53 Fed. 333; Lindley on Mines, 366; Wade Am. Mining Law, Sec. 26; King v. Amy Mining Co. 152 U. S. 222.

The discovery of the Little Blue Fraction lode having been placed within the limits of another prior existing valid claim, was not valid until there was a discovery made on unappropriated land. Lindley on Mines, Sec. 337; 20 Am. & Eng. Enc. of Law, 706, Note 2; Morrison Mining Rights, 8th Ed., Page 31; Armstrong v. Lower, 6 Col. 393; on rehearing, Page 581; Perigo v. Erwin, 85 Fed. 904; Moyle v. Bullene, 7 Col. App. 308; Golden Terra Mining Co. v. Smith, 2 Dak. 377; Michaels v. Mills, 22 Col. 439, 45 Pac. 429; Gwillim v. Donnellan, 115 U. S. 45-50; Larkin v. Upton, 144 U. S. 19-23, 13 Sup. Ct. Rep. 614; Cheeseman v. Schrieve, 40 Fed. 787; Girard v. Carson, 22 Col. 345; Little Pittsburg Con. Mining Co. v. Amy Mining Co. 17 Led. 57; Watson v. Mayberry, 49 Pac. 479; Fisher v. Seymour, 49 Pac. 30; Faxon v. Barnard, 4 Fed. 705; Miller v. Gerard, 33 Pac. 69.

The rule in this court is that the findings of the trial court will not be disturbed unless there is a clear preponderance of the evidence against the findings of the lower court. Randall v. Burke Township, 4 S. D. 337, 57 N. W. 4; Feldman v. Trumbower, 7 S. D. 408, 64 N. W. 189; Reid v. Kellogg, 8 S. D. 596, 67 N. W. 687; Webster v. White, 8 S. D. 479, 66 N. W. 1145; McKenna v. Whittaker, 9 S. D. 442, 69 N. W. 587; Hulst v. As-

sociation, 9 S. D. 144, 68 N. W. 20; Grewing v. Machine company, 12 S. D. 127, 80 N. W. 176; Sands v. Cruickshank, et al. 87 N. W. 589; Schilling v. Twitchell, 89 N. W. 474.

It is contended, however, that the Little Pittsburg location certificate was void because it had no reference to a natural object or permanent monument in it. On this proposition the rule is well established that this failure did not render the claim void for uncertainty. Bennett v. Hardrader, 158 U. S. 441; 15 Sup. Ct. Rep. 863; North Noonday, etc., v. Orient, 1 Fed. 535; Jupiter Mining Co. v. Bodie, 11 Fed. 679; Hammer v. Garfield, 130 U. S. 291.

CORSON, J.　This is an action to quiet title to a mining claim in Lawrence county. The case was tried to the court without a jury, and, the findings and judgment being in favor of the plaintiffs, the defendants appealed.

On this case being called for argument, the plaintiffs and respondents moved the court, upon notice previously given, to strike from the record the bill of exceptions settled and allowed by the court on the 31st day of July, 1901, upon the grounds that the same was not signed and settled within the time al lowed by law, and no good cause was shown why the same should be settled after the time had expired allowed by law, and that the order of the court made May 17, 1901, extending the time and the order settling the bill of exceptions on the 31st day of July, were not in furtherance of justice. It will be necessary to dispose of this motion before proceeding to discuss the case upon the merits.

It appears from the additional abstract that the case was tried in January and February, 1899; that the argument upon

the law propositions in the case were made on the 1st and 2nd days of March, 1899, and on the 1st day of April, the court announced orally its decision for the plaintiffs. About the 24th of June the findings and judgment in the action were signed by the court, and duly entered, and notice of the filing and entering of the same and of the judgment was served upon the attorneys for the defendants. On July 26th notice of intention to move for a new trial was served on the attorneys for the plaintiffs, and notice given that said motion would be based on the bill of exceptions thereafter to be settled. On or about the 25th day of August, 1899, the court, upon application of the defendants' attorneys, made an order extending the time in which to settle the bill of exceptions for 60 days, and this was the last order extending the time made by the court prior to the 13th day of May, 1901, when the defendants procured from the court an order requiring the plaintiffs to show cause why the defendants should not be granted 60 days in which to serve their bill of exceptions, and why they should not have leave to amend their notice of intention by inserting therein "the minutes of the court," instead of "upon the bill of exceptions." The order to show cause was granted upon the affidavits of one of the attorneys for the defendants and the court's stenographer. The reasons for the delay stated by the attorney for the defendants in his affidavit were (1) that the transcript was not finally completed by the stenographer and the last book delivered to the defendants until about the 20th day of October, 1900; (2) that after that time some negotiations for the purchase of mining ground here in controversy were had between the parties to this action, which caused a delay in the application for an extension of time in which to serve the said bill of exceptions.

On behalf of the plaintiffs an affidavit was made by one of the attorneys in which it was stated that the transcript had been delivered in sections, commencing with the 25th day of September, 1899, and the last book delivered on or about the 20th day of October, 1900; that the negotiations for the sale of the property took place in February, 1901, and occupied only about three weeks of that month, when all negotiations were at an end; that during the time from the entry of the findings and judgment until the time of the application to the court to fix a time for settling the bill of exceptions on May 13, 1901, the plaintiffs had opened up a large body of ore on the property, and had taken out ore from the same, and had erected a mill on the said property in order to work this ore, at a cost of $32,000. It will be observed that the judgment was entered in June, 1899; that in July the notice of intention to move for a new trial was served, and that on August 25th an extension of 60 days was granted, which expired on October 25, 1899. No further application appears to have been made to the court for an extension of time or any other order in the premises until May 13, 1901, over 18 months after the expiration of the extension of time granted by the court. The only reasons given why an application was not made to the court for a further extension of time after the 25th day of October, 1899, and prior to May 13. 1901, was, as stated by the attorney for the defendants in his affidavit, that he was unable to determine the precise time that would be required by the stenographer in transcribing her notes of the testimony and proceedings in the case, and by reason of the delay caused by the efforts of the parties to settle the action. It will be observed that a period of over six months elapsed after the last book of the transcript was

delivered before the application was made to the court for an order extending the time for an additional 60 days, and for leave to amend their notice of intention by substituting the minutes of the court for the bill of exceptions.

It is contended by the plaintiffs and respondents that neither good cause was shown for an extension of the time, nor was the extension of the time in furtherance of justice. They further contended that there was no showing whatever that the defendants took a single step toward preparing a bill of exceptions between the 20th day of October, 1900, when the last book of the transcript was delivered, and the 13th day of May, 1901. Section 5093, Comp. Laws 1887, provides: "The court or judge may, upon good cause shown, in furtherance of justice, extend the time within which any of the acts mentioned in sections 5083 and 5090 may be done, or may, after the time limited therefor has expired, fix another time within which any of such acts may be done." In McGillycuddy v. Morris, 7, S. D. 592, 65 N. W. 14, this court, in commenting upon that section, used the following language: "It will be observed that the power or authority to 'fix another time' within which the act may be done is coupled with the condition 'upon good cause shown.' The language is 'The court or judge may upon good cause shown, * * * fix another time within which any of said acts may be done.' The manifest purpose of the Legislature in the adoption of this section was to place the whole matter of giving notice of the intention to move for new trials and the service and settlement of bill of exceptions within the sound judicial discretion of the trial court; not to its mere arbitrary discretion as to the time within which the several proceedings may be taken. The

adoption of that section has, as it was undoubtedly designed that it should do, wrought a radical change in the power of courts and judges over the subject of the time within which the steps leading to a review of cases should be taken. But, as we have said the power is not an arbitrary one, but is limited to cases where 'good cause is shown' for the omission to do the act within the proper time. The lawmakers have prescribed the time within which bills of exceptions, statements, and notices of intention to move for new trials may be served, and within what time bills of exceptions must be settled, upon the theory that the time so prescribed would be sufficient in ordinary cases; and in adopting section 5093 its manifest intention was to prevent a failure of justice, by authorizing the court or judge to enlarge the time, for good cause shown, and to 'fix another time' in which an act may be done after the time had expired, when 'good cause' should be shown therefor. The exercise of the power being dependent upon 'good cause shown' there must be cause shown excusing the failure to do the act within the prescribed or enlarged time before the court can legally 'fix another time' for the performance of the act. It may not be essential that a formal order be made 'fixing another time' within which the act may be done, but there must be some showing excusing the omission to do the act within the proper time. This seems to be the view of the supreme court of North Dakota, where the section we are now considering was in force. In Moe v. Railroad Co. [N.D.] 50, N. W. 715, Judge WALLIN, who wrote the opinion in Johnson v. Railroad Co. [N. D. 48 N. W. 227], in commenting upon the latter case, after quoting from that opinion, says 'This holding imports—and such is our present view of the

law—that the district court, under the statute, has been vested with authority in these cases to extend time and fix new time when the statute's limit has run, but that such authority can be lawfully exercised only upon the condition set out in the statute: i. e., 'upon good cause shown.' " That learned court, in its opinion, further says: ' "The discretion to extend time is not absolute in the district court; and when such discretion is not, in our judgment, a sound judicial discretion, we shall not hesitate to review, and when necessary reverse the same. Welch v. County Court (W. Va.) 1. S. E. 337. The policy of the law demands that the utmost diligence should be exercised in taking the prescribed action necessary to a review of alleged errors made in the trial court. Looking towards prompt action, the legislature has specially limited the time within which the necessary steps preliminary to a review must be taken. The statutory time limited for giving notice of intention and for having bills of exception and statements settled is ordinarily ample for the purpose. It rarely happens that further time is necessary, but to meet the exigency of exceptional cases the statute permits the trial court 'upon good cause shown,' to extend the time. Without the required showing the power to extend time does not exist."

The object and purpose of section 5093 evidently was to prevent a failure of justice by reason of inadvertence, mistake, or excusable neglect; but it was not in the contemplation of the legislature that parties might intentionally disregard the time fixed by the staute, and then apply to the court to fix another time within which the required acts could be done. Counsel for the defendants and appellants seem to have assumed that they could take their time for making the trans-

script, and then such further time as they might deem proper in which to prepare their bill of exceptions; but such is not our construction of the section.   Ordinarily, parties in preparing their bills of exceptions must do so within the time limited by the Code, or as extended by the court, unless prevented by accident, inadvertance, mistake, or excusable neglect. While the attorney for the respondent does not seriously complain of the delay of about 18 months caused by the making out of the transcript, and without making any showing to the court for the necessity of such delay and procuring an order extending the time, this court is not willing to have it understood that it sanctions any such delay.   There can be no legitimate excuse for taking a year and six months in making out a transcript of the proceedings of a trial lasting only two weeks.   It will be observed in this case that the court announced its decision early in April, 1899, though the findings and judgment were not formally signed until something over two months later.   It was the duty of the counsel for the losing party, however, if considerable time might be required in making out the transcript, and they intended to make a motion for a new trial to commence the preparation of the same by proceeding at once to procure the transcript.   But in the case at bar no good cause seems to have been shown in any event for the delay in preparing the bill of exceptions after the transcript was completed on October 20, 1900.   Even if there were negotiations for the settlement lasting a few weeks they constituted no valid excuse for their failure to proceed in preparing the bill of exceptions.

It is urged by the appellants that the case at bar comes within the rule laid down in Davis v. Cook, 9 S. D. 319, 69 N.

W. 18, and Bunker v. Taylor, 10 S. D. 526, 74 N. W. 450; but neither of these cases furnish any support for the defendants in the case at bar. In Davis v. Cook, supra, the bill of exceptions had been served within the time as extended by the court but there was some delay in settling the bill, and hence it was not settled within the time limited and for good cause shown, and another time was fixed for the settling of the same; and in Bunker v. Taylor the notice of intention had been properly given, and the only question was as to the jurisdiction of the court to allow the notice to be amended.

In view of the long delay in preparing the bill of exceptions, and the failure to obtain an order from time to time extending the time for settlement of the bill. and especially the long delay intervening between the completion of the transcript on the 20th day of October, 1900, and the procuring of the order to show cause on May 13, 1901, we are clearly of the opinion that no good cause was shown, and that the court committed error in making the order of May 17, 1901, granting the defendants and appellants 60 days from the date thereof within which to prepare and serve a bill of exceptions and to move for a new trial; the order having been duly objected to and exceptions taken by the plaintiffs and respondents, and in settling the bill of exceptions on July 31st the same having been duly objected to, and an exception taken.

It is further contended by the respondents that the bill of exceptions was settled after the time for appeal had expired, and after an appeal had been taken, and that the court had no jurisdiction to settle the bill after the time for appealing had expired. In the view we have taken of the case, we do not deem it necessary to consider this question. The motion to

strike out the bill of exceptions and eliminate the same from the record is granted.

The only question remaining, therefore, is, did the court draw the proper conclusions from and enter the proper judgment upon the facts found? The property in controversy includes something less than an acre of mining ground in Lawrence county, claimed by the plaintiffs as constituting a part of the Wasp No. 2 mining lode, owned by them, and claimed by the defendants as a part of the Little Blue fraction lode owned by them. The facts found by the court are very voluminous, and we shall not attempt to do more than to give a brief summary of the findings we deem material to a determination of the questions presented by this record. The Wasp No. 2 was located by the predecessors in interest of the plaintiffs on October 12, 1893, and the various acts constituting the location are fully set out by the court in its findings, one of which was the placing of the west side center stake against a tree, and fastening the same by means of twigs, instead of setting the same in the ground. Prior to the location of the Wasp No. 2 lode, a mining claim known as the "Hilltop" had been located, and the Wasp No. 2, as located, extended partly over the southerly end of the said Hilltop lode. The latter lode, as it existed at the time of the location of the Wasp No. 2, was staked 161 feet too long on the southerly end. The Wasp No. 2, at the time of its location, as shown by the staking, was about 2,150 feet in length, extending 313 feet in a northerly direction from the discovery shaft and about 1,837 feet in a southerly direction therefrom, making an excess over the amount allowed by law of 650 feet. On the 11th day of July, 1894, the excess of 637 feet on the southerly end was located by the owners of the

17 S. D.—8

Wasp No. 2 as the Minnie fraction lode, and on the 17th day of October, 1894, the excess of 13 feet on the northerly end was located as the McShane fraction lode. On the 11th day of May, 1894, one Hallstead, the predecessor in interest of the defendants, located the Little Blue lode, making his discovery within the lines of the Hilltop lode. On or about the 8th day of November, 1894, the predecessors in interest of the defendants, and who at the time were the owners of the Little Blue lode, went within the lines of the Little Pittsburg lode, then a valid and existing location, and, having discovered a well-defined lode or vein of mineral bearing rock in place, bearing gold, located the Little Blue fraction lode nearly at right angles with the Wasp No. 2 and the Little Blue locations. This claim, as staked, extended over the Wasp No. 2, and conflicted therewith to the extent of something less than one acre, as above stated. On or about the 15th day of June, 1895, the owners of the Wasp No. 2 and the Minnie fraction locations caused a survey of those claims to be made by a surveyor, who ran the lines of the said claims, and reset the boundary stakes. As surveyed by him, the Wasp No. 2 was entirely within the lines of the original location of that claim, and the west side line was moved in an easterly direction by moving the southwest corner stake about 40 feet—the premises in controversy being on the westerly part of the Wasp No. 2 claim—the west side center stake not being moved. The lines of the Wasp No 2 were not only re-marked by stakes, but surveyor's lines were also cut through the brush, especially along the line from the west side center to the southwest corner stake; and this cutting was of such a character as could be observed by any one passing over the ground. In November, 1894, the owners of the

Hilltop lode, having ascertained by a survey that their claim was staked 161 feet too long, thereupon moved the southerly boundary stakes north to the proper line, and outside of the premises in controversy.    In the year 1896, Averill and Martin, the then owners of the Little Pittsburg lode, made application for patent for the same, and during the 60-days period of publication the defendants in this action, the then owners of the Little Blue fraction lode, filed in the land office their protest and adverse claim to all that portion of the Little Pittsburg lode in conflict with the said Little Blue fraction lode, and an action was commenced by the said defendants herein.    Issue was joined by the owners of the Little Pittsburg, defendants therein, and thereafter the plaintiffs and defendants in said action stipulated in writing that the said plaintiffs take judgment as prayed for in their complaint for that portion of the ground in conflict, which included the discovery shaft of the said Little Blue fraction lode, and that thereafter, on the 31st day of March, 1898, judgment was duly entered by the circuit court of Lawrence county in pursuance of said stipulation. The findings of the court include a number of other mining locations and other facts, but, in the view we take of the case, they are not material to a determination of the questions presented by this record.

The court concludes as matters of law: "(1) That on the 12th day of October, 1893, and thereafter, the Wasp No. 2 lode location was a valid existing mining claim to the extent of 1,500 feet in length along the lode thereof, to-wit, to the extent of 300 feet running northerly from the discovery shaft and 1,200 feet running southerly from the discovery shaft; and that no one else had a right to go within the limits of said claim to locate

any portion of the ground. (2) That the Hilltop lode, being 1,661 feet long on the 12th day of October, 1893, the Wasp No. 2, having located a portion of the excess on the south end of the Hilltop, became entitled to all that portion of the Hilltop lode within its lines which was in excess of 1,500 feet along the Hilltop lode. (3) That the Wasp No. 2 lode, being a valid location, Andrew Hallstead, the locator of the Little Blue lode, obtained no rights by reason of his location within the lines of the Wasp No. 2 lode, but that, if said Andrew Hallstead had obtained any rights by said location, he conveyed the same to the owners of the Wasp No. 2 lode by his deed of December 9, 1896, and the Wasp No. 2 owners succeeded to any rights that said Andrew Hallstead had within the limits of the said Wasp No. 2 lode. (4) That, the owners of the Little Blue lode never having abandoned any portion of the same, said Little Blue lode continued valid to the southern boundary thereof. (5) That the locators of the Little Blue fraction lode, having made their discovery within the limits of the Little Pittsburg lode, which was a prior, valid existing location at the date thereof, acquired no rights by reason of such discovery, and the Little Blue fraction did not become a valid existing claim until the owners of the said Little Blue fraction lode made a discovery of mineral-bearing rock in place carrying gold, without the limits of the Little Pittsburg lode, * * * to-wit, some time in the spring of 1896. (6) That upon the discovery of said vein or lode of mineral-bearing rock in place the said Little Blue fraction lode became a valid existing lode claim as to all ground embraced within said claim which had not theretofore been embraced within the limits of a prior, valid existing mining location. (7) That by the loca-

tion of the Little Blue fraction lode across the southerly end Little Blue lode, the owners of the Little Blue lode, who at the time were all owners in the Little Blue fraction lode, did not thereby abandon their rights in and to the Little Blue lode, and that there never was an abandonment of the Little Blue lode by the owners thereof. (8) That, as against the defendants in this action, the plaintiffs were at the commencement of this action, and are now, the owners, in the possession, and entitled to the possession of the whole of the Wasp No. 2 lode, as above described, and particularly of that portion of said Wasp No. 2 lode which is covered by the Little Blue fraction lode, and which is particularly described in finding of fact No. 16. * * * (9) That the plaintiffs are not estopped, by reason of the recital in the location certificate of the Wasp No. 2 that it is bounded on the west by the Hilltop lode, from claiming their west line as actually staked upon the ground. (10) That the judgment rendered in the circuit court of the Eighth Judicial Circuit of the State of South Dakota within and for the County of Lawrence, wherein James Julius, Rece R. Morgan, James Regis, John J. Nichols and James Sunderland were plaintiffs, and L. J. Averill and William L. Martin were defendants, and which involved the adverse application of the Little Blue fraction lode against the application for patent for the Little Pittsburg lode, lot No. 1,086, and which judgment was rendered on a stipulation between the parties, was in no wise binding upon and did not affect the plaintiffs in this action, and did not validate the Little Blue fraction lode except as between the parties to that suit. That a judgment therein by stipulation between the parties could not render the Little Blue fraction lode discovery made within the

lines of the Little Pittsburg lode good as against anyone not a party to that action."

The questions to be determined are: (1) Was the Wasp No. 2 an invalid location by reason of the fact that its westerly side stake was not firmly set in the ground? (2) Was the Wasp No. 2 an invalid location for the reason that it was originally located and staked 2,150 feet in length, instead of 1,500, the number of feet allowed by law? (3) Did the fact that the locators of the Little Blue fraction lode made their discovery within the lines of the Little Pittsburg lode render the Little Blue fraction lode invalid until it made a discovery outside of the said Little Pittsburg lode, and within its own lines? (4) Did the Wasp No. 2, by having located a portion of the excess on the south end of the Hilltop, become entitled to all that portion of the Hilltop lode within its lines in excess of the 1,500 feet? (5) Was the judgment entered upon stipulation in the case wherein the defendants herein were the plaintiffs and Averill and Martin defendants, adjudging that the Little Blue fraction discovery was within the lines of its location as made, admissible in evidence as against these plaintiffs, who were not parties to that action, or claiming under the plaintiffs therein?

It will be noticed that the Little Blue fraction lode was located over a year subsequently to the location of the Wasp No. 2 as originally staked, but it is contended by the appellants that when the Little Blue fraction was located it did not conflict with the Wasp No. 2 lode, but that subsequently to the location of the Little Blue fraction the owners of the Wasp No. 2 swung their stakes westerly, so as to include the ground in controversy. The court, however, found that the Wasp

No. 2 did not change its stakes as claimed, and also that the Little Blue fraction was an invalid location at the time it was made by reason of its having made its discovery within the boundary lines of the Little Pittsburg lode, which was then a valid existing mining claim, and that the Little Blue fraction did not become a valid mining claim until in 1896, when it made its discovery on its own ground outside of the Little Pittsburg lines after the Wasp No. 2 had been surveyed and restaked. The theory of appellants also was that, assuming that the Wasp No. 2 was staked on the ground as claimed by the owners of that location, the staking was insufficient, for the reason that the westerly side line center stake was not set in the ground, as required by law, but only a stake set on top of the ground, and bound to a tree by small twigs. It is further contended by the appellants that, as the Wasp No. 2 was staked 2,150 in length—650 in excess of the limit allowed by law—it is an invalid location. They further contend that, as the ground in controversy was included in the Hilltop claim as originally located, the owners of the Wasp No. 2 acquired no title to the said ground by reason of its location, notwithstanding the owners of the Hilltop claim subsequently contracted its southerly end line so as to exclude the ground in controversy.

It appears that the ground in controversy was first included in the Hilltop location, in 1893 it was included in the Wasp No. 2 location, and, thirdly, in the fall of 1894 in the Little Blue fraction location. The Hilltop, as we have seen, being located 161 feet too long, contracted its lines, thus leaving the ground in controversy free from that claim.

It is further contended by the appellants that they are en-

titled to the ground as being a part of the Little Blue lode, if
not entitled to it under the Little Blue fraction lode.    It is in-
sisted, however, by the respondents, that any claim to the
ground in controversy under and by virtue of the Little Blue
location cannot be considered, for the reason that the defend-
ants, in their answer, claim title exclusively under and by vir-
tue of the Little Blue fraction location, and that, as the answer
was not amended, or any motion made to amend, in the court
below, it is too late now for the appellants to make any claim
to the ground under the Little Blue location in this court.    We
are of the opinion that the respondents are right in this posi-·
tion.    The complaint is in the ordinary form, in which it is al-
leged that the plaintiffs are the owners in possession and enti-
tled to the possession of the Wasp No: 2 lode, and that the de-
fendants claim some estate, right, title, or interest to the same,
or a part thereof, and that the said claim of the defendants is
wholly without right, and they demand judgment that the de-
fendants may be required to set up any right, title, or interest
which they claim in or to the Wasp No. 2 lode, and that they
may be enjoined, etc.    ln the answer the defendants deny that
the plaintiffs are the owners of, in the possession of, or entitled
to the possession of the mining ground in conflict between the
said pretended Wasp No. 2 and the Little Blue fraction lode,
owned by the defendants, thereinafter more particularly de-
scribed.    The defendants describe in detail the location and
boundaries of the Little Blue fraction, and allege that the por-
tion of the easterly end of the said lode within the boundaries
of the said Wasp No. 2 is claimed by the plaintiffs, and said
claim of the plaintlffs is without right.    The defendants also
allege the conflict between the two claims was caused by the

plaintiffs' wrongful swinging of the southerly end stakes and the exterior boundary of the Wasp No. 2 location as originally staked to the west onto the said Little Blue fraction lode a distance of about 185 feet. The defendants further allege as a special defense that the plaintiffs ought not to be heard to assert any claim or right in and to that portion of the Little Blue fraction location in controversy herein for the reason that the mining ground and premises in controversy between the parties herein was a portion of the Hilltop lode, to-wit, a part of the southerly end thereof at the date of location of the said pretended Wasp No. 2 lode, that the said Hilltop lode was duly located on the 28th day of February, 1893, and that all the acts necessary and required by law to constitute a valid location had been performed thereon by the locators thereof prior to the attempted location of the said Wasp No. 2 lode on the 12th day of October, 1893, and describe the Hilltop lode, the manner of its location, and the boundaries, etc., and conclude by praying that the title of these defendants in and to the Little Blue fraction lode as hereinbefore particularly described be confirmed, and be adjudged valid as against the plaintiffs and all parties claiming under them, and that the plaintiffs be adjudged to have no right, title, or interest in the premises, etc.

It will thus be seen that the appellants, by their pleadings, relied entirely upon their right to the Little Blue fraction lode, and assert that the plaintiff should be estopped to claim the ground for the reason that the same was originally embraced within the exterior lines of the Hilltop, a prior and valid location at the time the Wasp No. 2 was located, and that the conflict between the Little Blue fraction and the Wasp No. 2 was caused by the Wasp No. 2 swinging its lines 185 feet westerly.

And it would seem from the findings of the court that the case was tried in the court below upon the theory that the locators of the Little Blue fraction, who were at the time the owners of the Little Blue lode, claimed to have abandoned so much of the Little Blue lode as included the ground in controversy in this action. The court, in its fourteenth finding, finds "that the owners of the Little Blue lode, Andrew Hallstead and his successors in interest, never did any act evincing any intention to abandon any portion of the Little Blue lode, and never did abandon any portion of the Little Blue lode." This court has held in several cases that judgments in this court will not be reversed upon a theory not advanced and relied upon in the lower court. Noyes v. Brace, 9 S. D. 603, 70 N. W. 846; Thresher Co. v. Schmidt, 9 S. D. 489, 70 N. W. 646; Parrish et al. v. Mahaney, 12 S. D. 278, 81 N. W. 295, 76 Am. St. Rep. 604; Deindorfer et ux. v. Bachmor, 12 S. D. 285, 81 N. W. 297; Loomis v. Le Cocq et al., 12 S. D. 324, 81 N. W. 633. It will not be necessary, therefore, to further consider the claim made in this court that the appellants are entitled to the ground in controversy under the Little Blue Lode.

The Little Blue lode and the Hilltop lode being disposed of, we are brought to a consideration of the respective claims of the owners of the Wasp No. 2 and the owners of the Little Blue fraction to the ground in controversy. As will be observed, the first contention of the appellants is that the Wasp No. 2 location was invalid for the reason that it was not staked in the manner prescribed by law, in that the westerly center side line stake, as found by the court, was not firmly set in the ground, but only fastened to a tree by small twigs. It is insisted on the part of the respondents that the failure to

set the stake in the ground on the west side line as required by section 2002 of the Compiled Laws did not render the location of the Wasp No. 2 invalid, as all the other corners of the claim were properly staked. But, as the court found that the Wasp No. 2 was properly staked before the Little Blue fraction location became a valid claim, it is not necessary to decide that question at this time.

It is further contended by the appellants that the Wasp No. 2 was an invalid location by reason of its being staked 2,150 feet in length—650 in excess of the amount allowed by law. It seems to be the general rule that an excessive claim of mining ground, either in length or width, renders the location void only as to the excess. 20 Am. & Eng. Ency. 695; Parley's Park Silver M. Co. v. Kerr, 130 U. S. 256, 9 Sup. Ct. 511, 32 L. Ed. 906; Richmond M. Co. v. Rose, 114 U. S. 576, 5 Sup. Ct. 1055, 29 L. Ed. 273; Jupiter M. Co. (C. C.) 11 Fed. 666; Howeth v. Sullenger, 113 Cal. 547, 45 Pac. 841; Taylor v. Parenteau, 23 Colo. 368, 48 Pac 505; Thompson v. Spray, 72 Cal. 528, 14 Pac. 182; Hansen v. Fletcher, 10 Utah 266, 37 Pac. 480. It is true there are some exceptions to the rule, but, as said by the author of the article on mines and mining in the authority first cited, "It is not to be expected that miners can in all cases be strictly accurate in marking their claims, and, if they are guilty of no fraud in marking an excessive claim, the law will protect them in holding a claim of legal size." It is not contended in the case at bar that there was any fraud on the part of the locators in including in the Wasp No. 2 claim, as originally staked, more ground than the parties were entitled to locate, and, as they stated the number of feet of ground claimed northerly of the discovery shaft and southerly there-

from, parties who desired to do so could have easily determined the boundaries of the claim to which the owners of the Wasp No. 2 were actually entitled under their location. In the case at bar, however, as before stated, the court finds that before the Little Blue fraction lode made a discovery within the lines of its own location without the exterior boundary lines of the Little Pittsburg lode the Wasp No. 2 had been surveyed, and the excess relocated under other names, and the boundaries properly marked as prescribed by statute. Hence, if the westerly side line center stake was not such as is required, and an excessive amount of ground had been included within the lines of the first staking, these defects in location in the Wasp were cured before the location of the Little Blue fraction became a valid mining claim in 1896, if the position of the court below is correct that there can be no valid mining claim until a discovery is made within the lines of such claim and outside of the lines of any other valid existing lode location. We are of the opinion that the position of the court below is correct in this latter view. McCarthy v. Speed, 11 S. D. 362, 77 N. W. 590. Mr. Lindley, in his work on Mines and Mining, states the law upon this subject as follows: "It is almost unnecessary to repeat what we have heretofore said that title to a mining claim can only be initiated by discovery upon the unappropriated lands of the government. No rights are acquired by an entry within the surface lines of patented lands, or other lands which are withdrawn from the body of the public domain. The discovery must be made within the limits of the location as it is ultimately marked upon the ground." Girard v. Carson, 22 Colo. 345. 44 Pac. 508: Little Pittsburgh Con. M. Co. v. Amy M. Co. (C. C.) 17 Fed. 57; Golden Terra M. Co. v. Smith, 2 Dak. 377, 11 N.

W. 97; Miller v. Girard, 3 Colo. App. 278, 33 Pac. 69; Watson v. Mayberry, 15 Utah 265, 49 Pac. 479. In the latter case the Supreme Court of Utah says: "The location of the mining claim is absolutely void when its discovery point is within another valid claim." As before stated, it is found by the court that no discovery was made by the Little Blue fraction outside of the lines of the Little Pittsburg and within the lines of its own location until the fall of 1896, more than a year after the lines of the Wasp No. 2 had been surveyed and restaked in the manner provided by law. The court was clearly right, therefore, in holding that the Wasp No. 2, was a prior and superior location to that of the Little Blue fraction, as the Little Blue fraction under the most favorable view, was not a valid location until a discovery was made without the lines of the Little Pittsburg claim.

It is further contended by the appellants that at the time the Wasp No. 2 made its location the ground in controversy was within the exterior boundary lines of the Hilltop as staked and therefore it acquired no right to that ground. But, as we have seen, the Hilltop was located 161 feet too long, and in 1894 it drew in its south end line, leaving the ground in controversy outside of its claim. Its location was void as to the excess, and the excess of the Hilltop within the exterior boundary lines of the Wasp No. 2 became a part of that claim, subject, of course to any prior valid claim. A location made conflicting with another prior location, if a proper discovery is made, is valid against all persons except the prior locator; and if the claim of the prior locator is abandoned. forfeited, or any part of the claim in conflict is not rightfully held by the prior locator, the subsequent location attaches to so much

of the ground not legally held by the prior locator as is within the lines of the subsequent location. We are of the opinion therefore, that the excess constituted a part of the Wasp No. 2 as against the Little Blue fraction. The circuit court was, therefore, clearly right in concluding as matter of law that the plaintiffs were entitled to the ground in controversy under their Wasp No. 2 location.

It is contended by the appellants that the court erred in its conclusion that the judgment entered in the circuit court, wherein the defendants in this action were plaintiffs and Averill and Martin were defendants, on stipulation, was in no wise binding, and did not affect the plaintiffs in this action, and did not validate the Little Blue fraction lode except as between the parties to that action. We are of the opinion that the court ruled correctly in making this conclusion of law. The plaintiffs in this action were not parties to that action, and did not claim any rights under the parties to the same. The appellants sought by the introduction of the judgment to show that the discovery of the Little Blue fraction lode was properly made within the lines of its own location as staked. As between the plaintiffs and appellants in that action, it was competent for the owners of the Little Pittsburg to stipulate that such was the fact, and allow the judgment to be entered accordingly. But such a judgment was not binding upon these plaintiffs, and they are not estopped thereby from showing that the discovery of the Little Blue fraction was actually made within the lines of the Little Pittsburg lode. It may be stated as a general rule that judgments only bind parties and privies, and that strangers are not effected by it. Freeman on Judgments, § 154; Black on Judgments, § 600. There are,

however, exceptions to the rule; as where, for instance, it is necessay to show a judgment as constituting a link in the chain of title. such judgment and proceedings thereunder may be given in evidence. Shanks v. Lancaster, 5 Grat. 110, 50 Am. Dec. 108; Naylor v. Mettler (N. J. Ch.) 11 Atl. 859. So, when the action is by a receiver, he may give in evidence, even against a stranger, the decree by which he was appointed for the purpose of showing his right to sue as receiver, and that the subject of the present litigation was committed to him in his character of receiver  Goodhue v Daniel, 52 Iowa, 19. But such a judgment is not admissible evidence against strangers of the grounds on which the recovery was had. It is only the fact of the adjudication which can thus be proved. Mr. Black, in speaking of the exceptions, said: "A judgment at law or decree in equity, when it constitutes a link in a chain of title, is competent and admissible evidence in that character and for that purpose, not only against the parties to the record but against all the world. Thus a decree of the court authorizing the marshal to make a deed of land in question is admissable in evidence for a stranger to that proceeding when a necessary link in his chain of title." Black on Judgments, § 607; Webb v. Den, 17 How. 577, 15 L. Ed. 35; Fowler v. Savage, 3 Conn. 90; Chamberlain v. Bradley, 101 Mass. 188, 3 Am. Rep. 331; Martin v. Rutt, 127 Pa. 381, 17 Atl. 993; Cravens v. Jameson, 59 Mo. 68. There are other exceptions, but those given sufficiently illustrate their nature.

The judgment in controversy in this action does not, however, come within any of the exceptions to the general rule. It is not offered for the purpose of showing title in the parties, as they did not claim under the judgment, but by virtue of their

location of the Little Blue fraction lode. If the judgment had constituted a link in their chain of title, probably, under the exceptions to the general rule, it might have been admitted to supply such link; but the facts upon which the judgment was based, even in such a case, would have been clearly inadmissible as against the respondents, who were strangers to that action.

It is contended by the appellants that the judgment was admissable upon the ground that application had been made by the owners of the Little Pittsburg lode for a patent for that claim, and the same had not been adversed by the respondents; but this contention is untenable for the reason that the repondents were not claiming adversely to the Little Pittsburg lode, and the Wasp No. 2 did not conflict with that location; hence the owners of the latter claim had no grounds upon which to base an adverse to the application of the Little Pittsburg, and they were not, therefore, required to file any adverse claim, and the authorities cited by counsel for appellants have no application to the case at bar.

Finding no error in the record, the judgment of the circuit court is affirmed.