ZIMMERMAN et al. v. FUNCHION et al.

(Circuit Court of Appeals, Ninth Circuit. May 4, 1908.)

No. 1,455.

MINES AND MINERALS—EXCESSIVE AREA OF PLACER CLAIM—RIGHT TO RELOCATE EXCESS.

The fact that a placer mining claim as staked exceeds the legal limit of 20 acres renders it void only as to the excess; and, where the owner is in possession and working the same in good faith, he has the right to elect what portion he will relinquish as the excess within a reasonable time after he discovers that his claim overruns, and cannot be forced to surrender any particular part by the location thereon of an overlapping claim by another before he knows of such excess.

In Error to the District Court of the United States for the Territory of Alaska, Third Division.

McGinn & Sullivan, J. C. Campbell, W. H. Metson, F. C. Drew, C. H. Oatman, and J. A. MacKenzie, for plaintiffs in error.

T. C. West, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This was an action of ejectment tried before the court below by stipulation of the parties without a jury, and resulted in findings and judgment for the plaintiffs, who are the defendants in error here. The subject of the action is a strip of mining ground in the Fairbanks mining district of Alaska covered by Creek placer mining claim No. 6 Above Discovery on Dome Creek, under which the defendants in error claim, and by bench claim No. 6 First Tier Right Limit of Dome Creek, under which the plaintiffs in error claim. It is undisputed that the Creek claim was the prior location; it having been located by Funchion on the 17th day of September, 1902, for one John C. Ross, to whose interest Funchion and his code-

fendant in error succeeded prior to the bringing of the action. The bench claim was located May 12, 1904, by Zimmerman. It turned out that the placer claim, as a matter of fact, contained 21.7 acres— an excess of 1.7 acres over the legal limit of 20 acres prescribed by statute for placer claims. It is well settled that the excess did not render the entire Creek claim void, but that it was void only as to the excess. Jupiter Mining Co. v. Bodie Cons. Min. Co. (C. C.) 11 Fed. 666; English v. Johnson, 17 Cal. 108, 76 Am. Dec. 574; Thompson v. Spray, 72 Cal. 528, 14 Pac. 182; Howeth v. Sullenger, 113 Cal. 547, 45 Pac. 841; Patterson v. Hitchcock, 3 Colo. 533; Taylor v. Parenteau, 23 Colo. 368, 48 Pac. 505; Hansen v. Fletcher, 10 Utah, 266, 37 Pac. 481; McPherson v. Julius, 17 S. D. 98, 95 N. W. 435; McElligott v. Krogh (Cal. Sup.) 90 Pac. 825; Lindley on Mines, § 362; Snyder on Mines, § 398.

In McIntosh et al. v. Price et al., 121 Fed. 716, 58 C. C. A. 136, we held, and rightly held, that where a prior locator is in the actual possession of a claim, which as a matter of fact exceeds the legal limit of 20 acres, and is diligently working the same in good faith, he is at liberty to elect what portion of the claim he will reject as the excess, saying:

"We are very clearly of the opinion that, if any portion of the ground located by the Kjelsbergs was subject to relocation as being in excess of the permitted width, the owners thereof in possession, under the circumstances found by the trial court, could not be deprived of the right to select the portion thereof which they would elect to hold, and that another locator had no right to enter upon that portion of the claim in which they were working and which was the valuable portion thereof, and oust them from possession by making a location thereon. The defendants in error were given no notice that the width of their claim was excessive, or that any part of their location was void, and they were given no opportunity to draw in their lines so as to comply with the local mining regulations. The policy of the mining laws of the United States does not permit a locator to thrust out of the possession of his discovery and the pay streak of his claim one who has located a placer claim in attempted compliance with the mining rules and laws, and who is actually engaged in mining upon that portion of his claim."

While the counsel for the plaintiffs in error concede that to be the law, they contend that where such prior locator is not in the actual possession of the claim containing an excess over the legal limit of such claims, and knowingly refuses or neglects to draw in his lines so as to embrace the legal limit only, any other prospector is at liberty to take such excess within another location from any part of the prior one; that otherwise such prior locator might hold the excess, however great, indefinitely. The question suggested is an important one, but we do not find it necessary or proper to decide it. in this case, being of the opinion that it does not arise upon the record. The counsel for the plaintiffs in error rely upon Funchion's testimony, and say in their brief that he testified:

"That Zimmerman was on the ground from May 12, 1904, claiming up to his stakes, and that Zimmerman had always claimed to them, defendants in error, that they were too wide at the lower end."

We do not understand such to be the effect of the testimony of that witness, who appears to have been very frank in his answers, and

from the findings of fact was evidently believed by the trial court, which is conclusive upon us. Funchion testified, in effect, among other things, that, so far from knowing that the lines of the Creek claim as located by him included an excess, he always thought that, in fact they included less, although he had intended taking the full 20 acres, and he further testified that he employed a surveyor by the name of Jackson to survey the claim, who did so and reported as the result of his survey 17.10 acres as the contents of the claim; that subsequently Zimmerman had the lines of the Creek claim surveyed by a surveyor who reported that they contained over 20 acres; and that he (the witness) then employed another surveyor, Mr. E. G. Allen, the result of whose survey was 21.7 acres. Said the witness:

"Then we went out on the ground, and I offered Mr. Zimmerman—I told him that we had too much ground, and that, if he wanted to, I would give him 88 feet across the lower end of the claim, which would then give us 20 acres, and, if he did not take that, then, I would disclaim the excess over on the left limit. Q. What did he say? A. He said, 'Go ahead.' Q. Indicate upon Exhibit A about where the 88 feet is that you refer to. A. Across the lower end, 88 feet right across the lower end there. Q. What did he say to that, did he refuse? A. Yes, sir. Q. What did you do with reference to disclaiming on the other side? A. I went over on the left limit, and disclaimed that excess. Q. In what manner? A. By posting a notice there. Q. Putting up another stake? A. Putting up another stake. Q. How far from the stake that you put up on the hill on that corner, if you remember? A. I don't remember. I measured it from the center. Q. Sufficient to reduce the claim to 20 acres? A. Yes, sir."

This survey of Allen was not made until October 22, 1906, and this action was commenced on the 8th day of September of the same year, so that it appears from Funchion's testimony, corroborated by the surveys, that, so far from knowing that his claim included an excess over the statutory limit, Funchion thought, until some time after the bringing of the suit, that his claim embraced less than 20 acres. That witness further testified that in 1903 he and Ross sunk a hole 22 feet to bed rock on the claim near the creek where they found gold, and that in the year 1904 (the year Zimmerman located bench claim No. 6) Zimmerman did the assessment work on the Creek claim under employment by them.

Under the circumstances appearing, we do not think it was permissible for Zimmerman to select the excess of 1.7 acres from that portion of the Creek claim that he wanted.

The judgment is affirmed.