NAUMAN, Respondent, v. PAYNE, Director General of Railroads, Appellant.

(189 N. W. 112.)

(File No. 5012. Opinion filed June 13, 1922.)

1. **Master and Servant—Locomotive Engineer, Recovery for Injury in "Pusher Service"—Down-grade Back-up Movement—Insufficient Light on Tender, Defendant's Burden of Proving Condition of Light was Proximate Cause of Derailment.**

   A railroad employee as locomotive engineer, in order to recover damages for an injury received by him resulting from the tender and engine leaving the track while operating a back-up on a down-grade, and who claims there was insufficiency of light on the tender, has burden of proving that the condition of the light was the approximate cause of the derailment.

2. **Same—"Pusher Service"—Furnishing Non-conforming Tender for Engine, Restricting Lateral Motion—Back-up At Excessive Speed—Chafing Plates, Whether Operating Normally—Draw Bar—Whether Normal—Rail Curve Not Exceeding One Degree—Damages Non-recoverable.**

Where a locomotive engineer received injuries resulting from derailment of the engine and tender while making a down-grade back-up movement at 35 miles per hour, there being in effect an order of the Interstate Commerce Commission limiting engine speed in back-up movements to 15 miles per hour, the grade at point of derailment not exceeding one degree (substantially a straight track); the engine not being one "regularly required to run backward for any part of its trip" but was called in as substitute for one out for repairs, the engine being known as an L-2 to which was attached a tender known as K-1, claimant contending derailment resulted from violation of boiler inspection act in furnishing said tender, and without devices permitting lateral motion on curves, and because also of failure to provide light on rear of tender as required by boiler inspection law and by I. C. C. rule; there being nothing in the chafing plates mechanism used as buffers between engine and tender which would bind or prevent one plate from rubbing normally on the other; it appearing that the draw bar connections between engine and said tender are substantially similar to those between an L-2 engine and L-2 tender, and roller bearings allow same lateral movement over the track; engine and tender having passed over about 500 feet from point of first departure of wheels from track; there being at rear of tender a temporary headlight for use in emergency "pusher service," the reflector giving diffused light 238 feet distance on track and 40 feet to either side of tender; no claim being made that derailment was caused by defect in or obstruction on track; held, that in order to recover for damages due to violation of safety appliance act, proof of defective appliance and injury is not sufficient, but it must be further shown that defect complained of was proximate cause of the injury; that while that question is ordinarily for the jury, yet when facts are such that all reasonable men must draw the same conclusion from them question of proximate cause is one of law. **Held,** further, that plaintiff's claim that want of lateral motion in tender was cause of accident is wholly disproven; that condition of headlight had no, possible causal connection with the derailment, hence was not such proximate cause; and defendant's motion for directed verdict should have been granted.

Appeal from Circuit Court, Walworth County. Hon. JOSEPH H. BOTTUM, Judge.

Action by Frank Nauman, against John Barton Payne, Director General of Railroads, Agent under Proclamation of the President, to recover damages for injuries claimed to have been

sustained while in defendant's employ as a locomotive engineer, in the "pusher service." From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and case remanded for further proceedings.

*Ed. L. Grantham,* and *C. O. Newcomb,* for Appellant.
*Julius Skaug,* and *A. A. Brown,* for Respondent.

ANDERSON, J. In this action, tried to a jury, respondent recovered a verdict of $25,000 for injuries he claims to have sustained while in the employ of appellant as a locomotive engineer in what is known as the "pusher service," between Rhame and Marmarth, N. D. While so employed he was ordered to use a locomotive engine known as an "L-2," to which was attached a tender known as a "K-1." In this service it was necessary to make a back-up movement from Rhame to Marmarth after a train had been pushed up the hill. In making this back-up movement, at the time of the accident, the engine, which respondent was operating, left the track and caused the injuries complained of. Respondent claims that the derailment and consequent injury was due to violation of the Boiler Inspection Act (U. S. Comp. St. §§ 8630-8639d) in two respects: (1) In furnishing a K-1 tender with an L-2 engine and failing to provide in the K-1 tender any devices or appliances to permit lateral motion; such lateral motion being necessary in a tender when making a back-up movement down grade on a sharp curve and particularly when used in connection with an L-2 engine, which has considerable lateral motion or swing in the rear part attached to the tender. (2) In failing to provide a light upon the rear end of the tender, such as is required by the Boiler Inspection Law and by rule promulgated thereunder by the Interstate Commerce Commission.

Respondent testified that at the time of the accident he was running the engine at a rate of 25 miles an hour. In reply to counsel he said:

"You are not right in assuming that I said the engine and tender were so attached that there could be no shifting of positions. There is a spring buffer in there, and a pair of buffer plates, with a spring behind them. They are what they call chafing plates. Their intention is to rub on each other from side to side. The surface is partially convex, and that is pressed into this rounded surface of the spring. The surface is 2 feet long

and 10 inches wide, or maybe 18 inches. The one on the engine is 2 feet wide and possibly 10 or 12 inches thick. That is more inclined to be flat, about three-fourths the size of the other one and held by spring. I never saw the chafing plates pass by, so they would pass each other. The drawbar will pull enough so they will not pass each other. The angularity of the drawbar would shorten the distance. I could not say what the difference is, or the allowance or depression made on the spring buffer. It is not several inches. They are short and heavy. *There is nothing in the mechanism that would bind or prevent one of these chafing plates from rubbing on the other. It is made for that purpose.* I could not say what degree of curve they would accommodate, whether it would be 12 degree or 18 degree, because I am not familiar with those terms. I could not tell just the degree of the curve. It would be a stiff curve. * * * *The trailer can move about 4 inches in either direction right at the trailer truck."*

. C. W. Bilty, called by appellant, testified:

That he held the position of mechanical engineer with defendant company since 1910, with exception of the years 1918 and 1919, during which he was employed by the United States Railroad Administration on all railroads under federal control. That he started as machinist apprentice, then became machinist, chief draftsman, and mechanical engineer, and as such has at all times been familiar with equipment of defendant company, and with specifications, plans, and drawings showing that equipment; familiar with the appliances involved in drawbar connections between engine and tender on what are known as L-2 and L-1 engines and L-2, K-1, and L-1 tanks. That the connection between L-2 and the L-1 and K-1 tank in respect to its drawbar are the same. In fact, they are interchangeable, and are covered by the same specifications. That the K-1 and L-1 tank are identical. That he is the mechanical engineer who designed and built the L-1, L-2, and K-1 engine, and who likewise designed and built the L-1, L-2, and K-1 tenders. That the K-1 and L-1 tenders are provided with roller bearings similar to those used on trailers, L-1 and L-2 engines, and that they provide the same lateral movement over the truck. That some of the K-1 and L-1 tenders are provided with swinging provision for lateral motion. The roller bearing provides lateral play of 1⅛ inches on either side of the center; the

swinging motion provides lateral play of one inch on either side of the center. The roller bearing appliance is patented and is known as the Barber roller device.

A. A. Fisher testified:

"I am traveling engineer on the Trans-Missouri division, Mobridge to Marmarth. I am required, in all locomotive and tender derailments, to immediately make inspection of same, to determine whether there were mechanical defects in the equipment. for that purpose I inspected this wreck. I found everything intact on the tender. I inspected the engine and tender, and found no defect. I observed that the tender was equipped with a Barber roller patent."

N. H. Fuller testified:

That he was superintendent of the Trans-Missouri division. In February, 1920, was trainmaster. That he visited the wreck, arriving at 5 o'clock on the following morning. Made an inspection. Saw marks on rails, a groove as if the flange of the wheel had been riding on the ball of the rail for several feet. Saw flange-marks on ties. Measured distance from first mark on rail to point where the west end of the tender was located. Found distance 500 feet. Based upon physical facts as he saw them, he estimated that at the time of the derailment engine must have been going at least 35 miles an hour.

It is conceded that at the time of the accident there was in effect an order made by the Interstate Commerce Commission limiting the speed of engines in back-up movements to 15 miles per hour. It is undisputed that at the point of derailment the curve did not exceed one degree. It appears that the engine used at the time of the accident was not one "regularly required to run backward for any part of its trip," but was called in to take care of an emergency caused by the engine previously used being out of repair. It appears that at the time of accident there was attached to the rear of the tender a temporary headlight, made for use on engines not regularly assigned, but used in emergency pusher service. Light consisted of 250-watt electric light, same power as regular headlight, with reflector giving a diffused light 238 feet distant upon track and 40 feet to either side of tender. It also appears that the accident occurred on the second shift covered by this emergency engine.

Appellant contends that respondent's claim that there was no device in the tender to permit lateral motion is clearly dissipated by respondent's unequivocal statement that there were such appliances, and that they performed the functions for which they were intended, to-wit, to permit lateral motion.

[1]    Appellant further contends that, by reason of the fact that the engine used at the time of the accident did not belong to the class "regularly required to run backward for any portion of its trip," the same did not come within the scope of rule 129b made by the Interstate Commerce Commission, and that hence there was no obligation to place on its tender a headlight conforming to the provisions of the rule. This, in the view we take, becomes immaterial, and we express no opinion in relation thereto. It appears that at the point where the derailment took place the curve was only one degree, which, according to opinion of experienced railway men, is practically the same as a straight track. Respondent does not claim that the derailment was caused by any defect in or obstruction upon the track, which, if the light on the tender had been in accordance with the rule, could have been discovered, and the accident avoided.

[2]    Respondent, in order to recover by reason of the insufficiency of the light on the tender, has the burden of proving that the condition of the light was the proximate cause of the derailment. In an action for damages due to violation of the Safety Appliance Act (U. S. Comp. St. § 8605 et seq.), proof of a defective appliance and injury is not sufficient to permit a recovery. Plaintiff must go farther, and show that the defect complained of was the proximate cause of the injury. Great Northern R. Co. v. Otos, 239 U. S. 349, 36 Sup. Ct. 129, 60 L. Ed. 322; St. Louis v. McWhirter, 229 U. S. 265, 33 Sup. Ct. 858, 57 L. Ed. 1179; Erie R. Co. v. Russell, 183 Fed. 722, 106 C. C. A. 160; Devine v. Chicago & C. R. R. Co., 259 Ill. 449, 102 N. E. 803; Osborn's Adm'r v. Cincinnati, N. O. & T. P. R. Co., 158 Ky. 176, 164 S. W. 818, Ann. Cas. 1915D, 449.

It is true that whether a defect or a violation of a Safety Appliance Act is the proximate cause of an injury is ordinarily a question for the jury; but when the facts are clearly shown, and but one inference is possible to be drawn therefrom—that is, if the facts are such that all reasonable men must draw the same

conclusion from them—the question of proximate cause is one of law. Drew v. Lawrence, 37 S. D. 620, 159 N. W. 274; Choctaw v. Holloway, 191 U. S. 334, 24 Sup. Ct. 102, 48 L. Ed. 207; Milwaukee & St. P. R. Co. v. Kellog, 94 U. S. 469, 24 L. Ed. 256; Vorbrich v. Geuder et al., 96 Wis. 277, 71 N. W. 434; Zimmerman v. Funchion, 161 Fed. 859, 89 C. C. A. 53; S. Pac. Co. v. Yeargin, 109 Fed. 436, 48 C. C. A. 497; M., K. & T. R. Co. v. Byrne, 40 C. C. A. 402.

We are satisfied from the evidence in this case that plaintiff's claim that want of lateral motion in the tender was the cause of the accident has been wholly disproved by his own testimony. From the evidence we also think it clearly apparent that the condition of headlight had no possible causal connection with the derailment, and hence was not the proximate cause of the injury. In other words, we think that in this case the facts are so clearly shown that but one inference is possible to be drawn therefrom. That, we think, resolves the matter into a question of law. Defendant's motion for directed verdict should have been granted.

Judgment and order appealed from are reversed, and the case remanded for further proceedings in accordance with this opinion.