## Wilson, Admr. v. McCullough Bros.

(Decided November 18, 1919.)

### Appeal from Daviess Circuit Court.

1. Bills and Notes—Overpayment—Recovery of Excess.—Where an overpayment is made on a note or notes, the excess may be recovered; and when parties enter into a contract whereby one is to finance a business for the other and the other is to turn over to the one all the gross receipts of the business and take receipts therefor, on final settlement the one entitled to the surplus may recover the same, although the transactions covered many years and a plea of limitation be interposed.

2. Compromise and Settlement—Evidence.—In the absence of clear and convincing evidence, the court will not go behind a writing showing that persons associated in business have made a full and complete settlement of their affairs up to a given date.

3. Appeal and Error—Finding of Chancellor.—Where the evidence is conflicting and the mind is left in doubt as to the right of the matter, the judgment of the chancellor will not be disturbed by this court.

W. P. SANDIDGE and J. R. HAYS for appellant.

BIRKHEAD & WILSON and R. W. SLACK for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming both on the original and cross appeals.

A partnership composed of two colored men, Beve and Jim McCullough, engaged in running a brick yard and manufacturing and selling brick in Owensboro, be-

ing short of capital, entered into an arrangement with a business man of that city named W. H. Wilson, who had money, whereby Wilson was to and did furnish to the partnership capital with which to operate the business. The educational qualifications of the colored men were so deficient that they were not prepared to keep a regular set of books, and to obviate this difficulty, it was agreed between the partnership and Wilson, that the partnership should execute a note or notes to Wilson for certain sums of money, and as the return from the business came in, the same should be turned over to Wilson, and Wilson should receipt the partnership for the sums thus turned over to him, the partnership to hold the receipts and Wilson to hold the notes until a final settlement should be made. This arrangement was made in 1900 and continued until the death of Wilson in 1915. At that time the partnership held receipts signed by Wilson, showing that they had paid to him at divers times between the date of the agreement, in 1900, and his death in 1915, the sum total of $55,379.50. In the meantime they had executed to him many different notes for different sums ranging from $50 up to as high as $4,000, but most of them were for amounts of $100 to $500. When Wilson would receive a payment on a note he would give a receipt, which read about as follows:

"Owensboro, Ky., Feb. 1, 1904.

"Received from McCullough Bros. $50 on $50 note.

"W. H. WILSON."

Or like this:

"Owensboro, Ky., July 4, 1904.

"Received from McCullough Bros. $100 on $300 note.

"W. H. WILSON."

Sometimes the amount paid by the partnership to Wilson was more than sufficient to take up the note, as illustrated by the following receipt:

"Owensboro, Ky., Sept. 20, 1904.

"Received from McCullough Bros. $250 on $223 note.

"W. H. WILSON."

On the same $223 note he received an additional $100 and gave the following receipt:

"Owensboro, Ky., Oct. 1, 1904.

"$100.

"Received from McCullough Bros. $100 on $223 note.

"W. H. WILSON."

This makes $350 received on the $223 note. Another illustration will suffice to show how they carried on their business. Early in 1903 the partnership executed and delivered to Wilson a note for $1,640. Afterwards and beginning with March 18th, they paid on said note the following sums: March 18th, $60.00, March 25th, $101.00, April 2nd, $55.00, April 10th, $80.00, April 15th, $40.00, April 24th, $70.00, April 29th, $70.00, May 6th, $76.00, May 13th, $6.00, May 27th, $198.00, and so on up to November 20th of that year when they had paid him in all $3,238.50, on the $1,640 note, an overpayment of $1,-598.50. Many other instances of overpayment are disclosed by the record. No settlement of the accounts between Wilson and the partnership was had at any time subsequent to the year 1905, if indeed one was made then. After the death of Wilson his administrator settled with the partnership for the years 1913, 1914 and 1915, and paid the partnership a considerable sum of money, but the personal representative of Wilson declined to settle for the years 1900 to and including 1912, and this suit was instituted by the partnership against the estate of Wilson to recover $17,177.50, alleged to be due the partnership on account of overpayment of the several notes which they had given to Wilson between the making of the agreement and the end of the year 1912. With the petition was filed a great number of receipts signed by Wilson, showing the sums of money the partnership had paid him. These sums added together amount to $55,-379.50, while the amounts paid by Wilson to the partnership on its account and for its benefit, total only $38,-202.00, leaving a balance of $17,177.50, as claimed by the partnership.

The administrator challenges the whole transaction and denying that the estate is indebted to the partnership in any amount, says that there was no agreement such as averred by the partnership, between Wilson and the colored men. With this contention, however, we cannot agree. From the numerous transactions it plainly appears that Wilson was furnishing money to the partnership, and the partnership was turning over to him the gross receipts of its business. The method employed and the great number of transactions would appear to be sufficient to sustain the contention of the partnership that Wilson had entered into an arrangement similar to that alleged in the petition and had agreed to provide the money with which to carry on the business, and that

the method adopted for keeping the accounts was identical with that stated in plaintiff's petition. In addition to that, however, we find a writing which evidences an identical agreement, which reads:

"July 1, 1905.

"This agreement is between Beve and Jim McCullough. This day I agree to pay them all money that's paid to me over mortgages and notes I hold against them when settled.

·"W. H. WILSON."

On the same day Wilson gave the following receipt:

"July 1, 1905.

"Received of McCullough Bros. $680 on $600 note.

"W. H. WILSON."

which would indicate that as they had made no settlement, Wilson, having received $680 on a $600 note, was to return the balance whatever it might prove to be on settlement when the exact amount of the overpayment was ascertained.

Issue being joined, the cause was referred to the master to take evidence, settle the accounts between the contending parties, and report his finding to the court. This was done. The evidence of a great number of witnesses was taken. All the notes executed by the partnership to Wilson which could be found, or proven to have existed, were credited to Wilson, and all the receipts given to the partnership and signed by Wilson were credited to the partnership, and the commissioner, after a very careful review of all the evidence, arrived at the conclusion that the partnership had not sued for all that was really due it, which he found to be more than the $17,-177.50, claimed in the petition, but on account of the state of the pleadings awarded the partnership only the sum which it claimed, $17,177.50. When this report was filed the personal representative of the estate of Wilson filed exceptions to it, and on a trial of the exceptions before a special judge, certain items to the credit of the partnership were stricken, and the amount due the partnership was fixed at $7,260.75, and judgment entered accordingly, and from this judgment the administrator prosecutes this appeal, and the partnership prosecutes a cross-appeal.

Among the receipts and papers filed is one dated September 14, 1905, which reads as follows:

"Upon settlement in full for money furnished us to burn and manufacture brick, we find a balance due W. H. Wilson of ninety-seven dollars and seventy-five cents.

"McCULLOUGH BROS.

"By S. B. McCULLOUGH."

This receipt was given about five years after the business started and appears to show that on that date a full settlement had been made between the parties with reference to the burning and manufacture of brick. The manufacture and selling of brick was the only business which the partnership carried on. The trial court considered this receipt as showing a complete settlement up to that date, and declined to go behind it.

While the partnership pointed to certain evidence which would indicate that this receipt was not upon a settlement of the whole affairs between Wilson and the partnership with reference to the money furnished by Wilson, we are of opinion, in the absence of direct and positive proof, that the trial court did not error in confining the right of the partnership to recover to a period subsequent to September 14, 1905, and as treating that settlement as a settlement in full of all the affairs between the partnership and Wilson up to that time. It is true that previous to September 14, 1905, according to the receipts produced, a much larger sum of money was paid to Wilson by the partnership than was paid out by Wilson to or for the partnership so far as the record discloses, but there may have been and perhaps were other sums paid out by Wilson for the use and benefit of the partnership, and this conclusion is strongly supported by the receipt of date, September 14, 1905. We cannot conceive of the partnership giving to Wilson a receipt showing that "upon settlement in full for money furnished us to burn and manufacture brick, we find a balance due W. H. Wilson of ninety-seven dollars and seventy-five cents," if, indeed, Wilson was indebted to the partnership at that time for money which the partnership had paid to him. How could there have been a full settlement, as stated in the receipt, unless all the accounts between the parties were taken into consideration? Wilson being dead and, therefore, unable to give his version of the controversy, the law compels those with whom he dealt, including the members of this partnership, to hold their peace, and they were not allowed to explain the details of the several transactions. We are,

therefore, compelled to resort to the written evidence alone, of which this receipt is a material part. Giving it its reasonable and fair meaning we conclude that the parties to it had a full settlement of their accounts on September 14, 1905.

Beginning with that date, the trial court, with a few exceptions, gave to the partnership credit for all the sums which the receipts show were paid by it to Wilson, and charged the partnership with all the sums mentioned in the several notes given by it to Wilson, and subtracting the latter sum from the former, arrived at the conclusion that the partnership was entitled to recover of Wilson's estate the sum of $7,260.75 only. While there is some contrariety in the evidence and much confusion, we are not prepared to say that the chancellor erred in his finding of fact or law. Our rule in such case is to sustain the chancellor unless his finding appears to be against the weight of the evidence, and that not appearing here the judgment must be affirmed both upon the original and cross appeals.

Judgment affirmed.