ADAMS v. YUKON GOLD CO. et al.

(Circuit Court of Appeals, Ninth Circuit. May 6, 1918.)

No. 3058.

1. MINES AND MINERALS ⬦⟹29(4)—PLACER MINES—LOCATION.
    A location of a placer claim, which by mistake contains an excessive area, is invalid only as to the excess.

2. MINES AND MINERALS ⬦⟹26—PLACER MINES—RELOCATION.
    Where a placer location is voidable, because excessive, another may not locate on the excess without giving notice to prior locators to select authorized area.

3. TENANCY IN COMMON ⬦⟹45—RIGHT OF COTENANT.
    One cotenant cannot bind his companions in interest in a matter relating to the joint property, unless special authority is granted; nor can one cotenant convey by metes and bounds to the prejudice of others.

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. MINES AND MINERALS ☞26—LOCATIONS—EXCESS.

Where complainant, who located on a part of a placer claim which contained an excess of area, notified only two of the joint co-owners, and did not locate as directed by them, *held*, that he was no more than a trespasser, and acquired no title.

Appeal from the District Court of the United States for the Fourth Division of the Territory of Alaska; Chas. E. Bunnell, Judge.

Suit in equity by S. C. Adams against the Yukon Gold Company, a corporation, and others, to quiet title to the Anaconda Fraction and the Anaconda No. 2, placer properties on Otter creek, Alaska. Decree for defendants, and complainant appeals. Affirmed.

This is a suit in equity, brought by Adams, appellant, against Yukon Gold Company, and certain individuals, appellees, to quiet title to the Anaconda Fraction and the Anaconda No. 2, placer properties situate on Otter creek, Alaska. The appellees claim that they and their grantors located the ground in controversy in April, 1909, as a portion of the Prospector Association placer claim. The facts found by the District Court are as follows:

The Prospector placer claim, when located and staked out in 1909 by appellees and their grantors, contained an area of 187 acres, or an excess of 27 acres. The excess area was included by mistake, and without intention on the part of the locator of acquiring more than 160 acres. In April, 1911, Adams measured the Prospector claim and found that it was in excess of 160 acres. Thereafter he went to Muckler and Chittic, two of the co-owners of the Prospector claim, and notified them of his intention to stake such excess. These two co-owners told him, if the claim contained an excessive area, "to stake such excess from either end or the side of said claim." Some of the co-owners of the Prospector claim were well known in the vicinity where the claims were situate, and lived thereabouts, but they were not notified nor advised of the fact that the claim contained an excess; nor were they ever advised of the "instructions or directions" given by the co-owners, Muckler and Chittic, to Adams to take up such excess at either end or side line of the claim; nor did they authorize or ratify the act of Muckler and Chittic. Thereafter, on May 23, 1911, when the locators of the Prospector and their grantees, except Muckler and Chittic, were without knowledge that the claim contained an excess, Adams, without the knowledge of the owners, except the two named, went onto the Prospector claim and pretended to make a placer location of the Anaconda Fraction, claiming 120 feet in width by 2,640 in length. The ground located as the Anaconda Fraction is wholly within the exterior boundaries of the Prospector claim, but none of its boundaries cover or adjoin any boundary line of the Prospector claim, and the Anaconda Fraction is not located either at one end or one side of the Prospector claim. The boundaries of the Anaconda Fraction were marked, discovery was made by Adams and his colocator, and notice of location was recorded in the Otter precinct.

On July 19, 1913, the locators of the Prospector and their grantees, except Muckler and Chittic, not knowing that the Prospector claim contained an excess of 160 acres, Adams went within the boundaries of the Prospector claim and made a placer location, called the Anaconda Fraction No. 2, marked the the boundary, discovered gold, and recorded notice of location, claiming land 125 feet in width by 5,280 feet in length. As marked upon the ground, the claim is 5,374 feet long, 130 feet wide at the easterly boundary, and 125 feet wide on the westerly boundary. The southerly boundary of the Anaconda Fraction No. 2 is not coextensive with the southerly boundary of the Prospector claim, and the westerly end line of the Anaconda Fraction No. 2 is 254 feet easterly from the easterly end line of the Prospector, and the conflict between the Anaconda Fraction No. 2 and the Prospector, after casting off the excess on the westerly end, is to the extent of 14.31 acres.

The court found that Adams did not stake or locate either of these two lo-

cations on "either end or side of said Prospector claim, as he was requested to do by said Muckler and Chittic"; that when the locations were made by Adams the Prospector was a valid mining location, and Adams intended to take up a portion of the excess area contained in the Prospector claim; that it was practicable for Adams to take the excess area contained within the boundaries of the Prospector in a more compact form than that included within the Anaconda Fraction and the Anaconda No. 2; that, except Muckler and Chittic, the locators and the grantees of the Prospector did not know that the claim contained an excess area until after the commencement of this action, and that thereafter they caused a survey to be made, and made an amended location, by casting off such excess at the westerly end of said claim, and by drawing in their lines and stakes so that the area of the claim as amended contained only 160 acres.

From these facts the court concluded that, when Adams went within the boundary lines of the Prospector claim and pretended to locate the two claims referred to, the Prospector claim was a valid subsisting mining location; that Adams acquired no right to any part of the area contained within the boundaries of the Prospector claim; that his two locations were null and void; that the appellees were owners of the premises described as the Prospector Association claim as originally staked and located by them, less the excess area contained within the original boundary lines of the Prospector claim as marked upon the ground and described in the amended location notice. Decree was thereafter entered in conformity with the conclusions of the court.

E. Coke Hill, of Ruby, Alaska, William A. Gilmore, of Seattle, Wash., and James E. Fenton, of San Francisco, Cal., for appellant.

Richard C. Harrison, of San Francisco, Cal., Henry Roden, of Juneau, Alaska, John L. McGinn, of San Mateo, Cal., and R. F. Lewis, of San Francisco, Cal., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] Many of the errors assigned go to the sufficiency of the evidence to sustain the findings; but a careful reading of the record satisfies us that the findings are all in accord with the evidence and must stand. We therefore pass to the consideration of what legal principles should control. Under the ruling of McIntosh v. Price, 121 Fed. 716, 58 C. C. A. 136, Zimmerman v. Funchion et al., 161 Fed. 859, 89 C. C. A. 53, Waskey v. Hammer, 170 Fed. 31, 95 C. C. A. 305, and Jones v. Wild Goose M. & T. Co., 177 Fed. 95, 101 C. C. A. 349, 29 L. R. A. (N. S.) 392, a location of a placer claim made in good faith, but by mistake containing an excessive area, is not wholly void, but is invalid only as to the excess, which may be rejected from such portion as the owner may select, and until the owner is advised that there is an excess, and has had a reasonable time within which to make his selection, his possession extends to the entire claim, and any one who goes upon it and makes a location becomes a trespasser, and his location is a nullity and void for any purpose.

[2, 3] Appellant contends, however, that the Anaconda locations made by Adams are excluded from within this general rule because Adams, having told Chittic and Muckler, two owners in the Prospector claim, that there was an excess, and having obtained from them permission to locate the excess area; fulfilled all legal duty resting upon him, and that the consent of other co-owners for him to locate the

excess was not required. But we have the general rule that one cotenant cannot bind his companions in interest in a matter relating to the joint property, unless special authority is granted. He cannot make a promise on behalf of all cotenants or dispose of the property. Nor can he convey by metes and bounds to the prejudice of a cotenant. Varnum v. Abbot, 12 Mass. 474, 7 Am. Dec. 87; Lindley on Mines, p. 791. Of course, if Chittic and Muckler were the agents of their cotenants by implied or express delegation of authority, and gave the permission in the exercise of their authority as agents, the cotenants would be bound. But the facts negative the position that any such agency for the cotenancy existed, for the findings are that the co-owners, except Muckler and Chittic, had no knowledge that there was an excess until after this suit was brought. Therefore, the doctrine of agency being irrelevant to the case, we come back to the question what general rules must control.

It seems clear that the owners, other than the two referred to, being ignorant of the fact that their claim contained an excess area, could not be prejudiced by the general consent given by Chittic and Muckler. As co-owners they were entitled to the possession of the entire claim, and, if there was an excess, to be advised of the fact, to the end that they might, within a reasonable time, make a selection of what ground they intended to preserve as their true claim. Presumably this was a valuable right, and, in the absence of a showing of substantial effort to give a notice to all co-owners of record, notice to two is not a compliance with the spirit of the mining laws, which in their liberality have preserved the right of selection. A contrary view might put many co-owners of a mine at the mercy of one of their fellows, and possibly lead to a practical surrender by one co-owner of the most valuable portions of the claim.

We are not called upon at this time to decide just what form of notice would be regarded as sufficient to give to co-owners of record notice that there is an excess, or what excuse for failure to give actual notice would be held sufficient, because in this instance Adams failed to make effort to notify any owners except two, although some others were in the vicinity, and the record of the names of all was within easy access.

The justice of the views we have expressed is made more apparent by the further finding of the court that Muckler and Chittic were told by Adams, if the claim contained an excessive area, to stake such excess from either end or the side of the said claim; but it is found that Adams did not make his locations on either end or side of the Prospector claim, as he was requested to do by Muckler and Chittic. Reference to the map sustains this finding, in that it shows the Anaconda Fraction as a strip taken off the southerly boundary of the Prospector claim, with its southerly boundary not running parallel with the southerly line of the Prospector, but at an angle, so as to leave a strip of ground between the southerly boundary of the Prospector and the southerly boundary of the Anaconda Fraction. It also shows that the Anaconda No. 2, which includes the Anaconda Fraction, has for its southerly boundary the southerly line of the Prospector, which is iden

tical with the northerly line of the Mohawk, and extends westerly of the west line of the Prospector.

The case thus resolves itself into one where, without notice or attempt to give notice to co-owners entitled to be notified of an excess area, the appellant went within the limits of a valid placer location, and without giving the owners opportunity to cast off the excess area endeavored to make locations for the benefit of himself. His attitude became that of a trespasser, and he cannot profit by his pretended locations.

The decree is affirmed.