## Union Gas & Oil Company v. Indian-Tex Petroleum Company, et al.

### (Decided January 23, 1923.)

### Appeal from Johnson Circuit Court.

1.  Mines and Minerals—Termination—Notice.—An oil and gas lease executed by the landowner for the receipt of a nominal consideration and conditioned that it shall continue for one year and then

become null and void, unless the lessee shall thereafter pay at the rate of ten cents per acre for each year drilling is delayed, may be terminated by the lessor after the expiration of a reason able time from the giving by him of notice to the lessee that he will not again receive rentals for the continuance of the lease but will insist upon development of the property.

2. Mines and Minerals—Abandonment—Nullity of Contract.—A lessor in possession of the premises under such a lease may after the expiration of a reasonable time from the giving of such notice, declare a forfeiture of the lease, and the lessee having by his conduct in failing to enter upon the premises and begin operations within a reasonable time after receiving notice from the lessor so to do, be held to have abandoned the leased premises and to acknowledge the nullity of the lease contract, and thereafter will have no right to enter.

3. Mines and Minerals—Abandonment.—No action in equity is necessary in such case on the part of the lessor to nullify the lease.

4. Mines and Minerals—Forfeiture.—Where the lessee fails to enter upon the lease and begin development for oil and gas within a reasonable time from the giving of such notice, the lessor may declare a forfeiture and execute a new lease to another, and this lease will be upheld. Such new lease by the lessor is even such a declaration of forfeiture on his part.

5. Mines and Minerals—Intention to Terminate Lease—Notice.— Where a lessor sells and conveys a part of his tract to another person while the lease is in force and after the lessor has given to the lessee written notice of his intention to terminate the lease unless development work is commenced on the tract, the grantee of the portion of land may rely upon the notice given by his predecessor in title to the lessee and declare a forfeiture of the lease on his part of the tract if operations are not begun thereon within a reasonable time from the giving of the notice.

HOLT, DUNCAN & HOLT and OTTO C. GARTIN for appellant.

O'REAR, FOWLER & WALLACE, WHEELER & WHEELER and S. S. WILLIS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

This appeal presents four distinct controversies involving the title and ownership of as many oil and gas leases on land situated in Johnson county, Kentucky. The appellant, Union Gas & Oil Company, insists that it is the owner by assignment of each of the said leaseholds and that the appellee company has no title to either thereof, while the appellee, Indian-Tex Petroleum Company, asserts the four oil and gas leases belong to it and ask by this action to have appellant's claim declared a cloud upon appellee's title and of no force or virtue.

In February, 1916, George Gillem and wife, W. H. Fyffe and wife, and T. M. Furgerson, a single man, executed and delivered to one Albin, remote assignor of appellant company, three separate lease contracts upon their several tracts of land. The consideration for each of these contracts was one dollar, recited to have been in hand paid by Albin to each of the said grantors, and their contract was to continue for a term of ten years, with this condition: "In case no well is commenced within twelve months from this date then this grant shall be null and void, *unless* second party shall thereafter pay at the rate of ten cents per acre for each year that drilling is delayed." No drilling was commenced upon either of the tracts within the one year, or at any time by Albin or those claiming under him, but rentals were paid for the years 1917, 18, 19 and 20, and were tendered for the year 1921 but were refused by the landowners because of failure on the part of the lessee company to drill and develop the property for oil and gas within a reasonable time after the lessors had given notice to the holder of the leases that no further rentals would be received, and that they would require development of their land as a condition to the further continuance of the leasehold, the said written notice having been given to the holders of the lease on the 9th day of February, 1920, that being the next day after the rentals for the preceding years had been paid. After the giving of the aforesaid notice Furgerson conveyed his land to George Gillem and Gillem became the owner in fee of said land, subject, of course, to the Albin lease. About June, 1920, George Gillem sold and conveyed fifteen acres of his home place to his brother, John C. Gillem, and John C. Gillem immediately took possession and notified appellant company that he was the owner of the said fifteen acres. He did not, however, notify appellant company that he would not receive rentals under the existing lease and would require development of his said fifteen acres. Both the lease on the fifteen-acre tract conveyed to John C. Gillem and the remainder of the George Gillem tract are in dispute in this action. The lease contracts contained no provision for the payment of rentals in advance, and appellant company took advantage of this omission, as it had a right to do, and paid the rentals at the end of each year and tendered the rentals on February 8, 1921, to John C. Gillem for the whole of the George Gillem tract, of which John C. Gillem was the owner of only fifteen acres. These rentals

which were sent by registered mail, were returned by Gillem to the company unopened, pursuant to the notice which George Gillem had served on appellant company on February 9, 1920. This notice reads as follows:

"NOTICE.

"To the Union Gas & Oil Company, Assignee of A. C. Albin: You will by this take notice, that on February 8th, 1916, G. W. Gillem and Ollie Gillem his wife, executed and delivered to one A. C. Alvin one certain oil and gas lease on a 15-acre tract of land and on the same date executed to the said A. C. Albin an oil and gas lease on an 80-acre tract of land, both of said tracts of land lying and being in Johnson county, Kentucky, and which are described by metes and bounds in said leases; that on April 17, 1917, said lease or leases were assigned by said A. C. Albin to A. B. Ayers, etc., said assignment being recorded in Lease Book No. 12, page 140, Johnson county court records, and later and on the 21st day of April, 1917, said A. B. Ayres, etc., assigned said lease to the Union Gas & Oil Company, said assignment being recorded in Lease Book No. 12, page 145, Johnson county court records.

"You will therefore take notice to begin operation for the development of said premises for oil and gas by actual drilling in good faith and prosecute said work continuously until said premises are developed, and failing to do so within a reasonable time after the service of this notice upon you, or your agent or attorney, suit will be instituted against you for the cancellation of said lease.

"You are further notified that we will not accept any further rental on said lease and we are this day notifying the Bank of Blaine, Blaine, Kentucky, not to accept any more rentals if sent to them to be placed to our credit in the future on account of said lease or lease having been executed.

"Given under our hand this the 9th day of February, 1920."

After the expiration of the rental year on February 8, 1921, appellant company not having developed or offered to develop the property according to the terms of the lease, as contended by appellees, and after waiting for some time thereafter, appellees, as the owners of the land, executed at different times lease contracts upon their several respective properties to a person who later assigned them to another, who transferred them to appel-

lee, Indian-Tex Petroleum Company, and said appellee company is now claiming each of said leases under and by reason of the said last named lease contracts executed in 1921. The fourth, or Wayne Wright, lease containing three-acres, also involved in this litigation, is claimed by the appellant Union Oil & Gas Company under two other lease contracts; one from Wm. H. McKenzie and wife to Albin, and the other from George Kelley and wife to Albin, both executed in 1916, and passed by mesne assignments to appellant company. With respect to this three-acre lease appellant company contends that the McKenzie and Kelly lands adjoin and that as their said lease contracts fully cover both tracts the three-acre lease, known as the Wayne Wright, and which as claimed by appellant company lies on the boundary between the lands of McKenzie and Kelly, is covered by said title. Appellant insists that there was no vacant land between the McKenzie and Kelly tracts and said Wayne Wright lease on this supposed vacant land, acquired by him by patent, was and is a nullity.

Taking up these several contentions appellant company states its claim to the John C. Gillem 15-acre tract as follows:

"On the 8th day of February, 1916, George Gillem (who then owned the whole of the Gillem home place) executed an oil and gas lease thereon to A. C. Albin, who subsequently assigned the same to Millikan and Ayres, and they in turn transferred it to the Union Oil and Gas Company. The boundary embraced in this lease was described as containing 50 acres. Subsequently, and after George Gillem had leased the whole thereof to Albin, he (George Gillem) sold 15 acres in fee (subject of course to his prior lease to Albin) to his brother John C. Gillem, and this 15 acres is the tract No. 1. here in controversy. The conveyance from George to John C. Gillem of the 15 acres took place some time in the year 1920, but just when does not appear. However, John C. Gillem gave notice to the Union Gas & Oil Company in the month of June, 1920, that he had purchased the same."

Admitting these facts, appellee insists that the appellant's claim must fail because the Albin lease under which appellant asserts title had lapsed and become of no force or effect by reason of the failure of appellant company to comply with its terms and develop the said property for oil and gas within a reasonable time after George Gillem who owned the lands on the 9th of February, 1916,

gave to appellant company on said date the written notice set out to the effect that he would not receive other rentals and continue the lease in force, but would require development of the property within a reasonable time. As the evidence shows that appellant company was drilling wells in the immediate vicinity of the lease in question and had machinery either of its own or in its employment with which to drill wells and develop property for oil and gas, more than sufficient time had elapsed from the giving of the notice on Febraury 9, 1920, to February 8, 1921, in which it could, by the exercise of reasonable diligence, have commenced a well on the said George Gillem tract, of which the John C. Gillem tract is a small part, if it were necessary to do so in order to keep the lease in force by its terms. The lease contract, however, did not require the appellant company to begin a well upon the premises at all, provided it paid to the landowner ten cents per acre for each year such drilling was delayed. The contract was wholly executory. Nothing had been done by the lessee to develop the property. In construing unexecuted oil and gas leases containing similar provisions we have held in a long line of cases, beginning with Monarch Oil Company v. Richards, 124 Ky. 602, that the principal consideration to the landowner in granting a lease of this general character is development of his property so that he may realize royalties, and that the insignificant and mere nominal sum of one dollar, mentioned in the contract as consideration, and the delay money—ten cents per acre per year—are inconsequential and wholly insufficient to prevent the grantor from effecting a nullification of the lease where by its terms it is to become null and void if the rentals are not paid, by giving the lessee written notice of the landowner's intention to refuse further rentals and to require development of the property within a reasonable time, according to the terms of the lease. By this rule it is clear that John C. Gillem, the landowner, had the right to declare a forfeiture of the lease after the expiration of a reasonable time from the giving of the notice aforesaid, if he had given the notice himself; but appellant company insists that the privilege and right of the landowner to give such notice is personal, belonging to him individually and cannot be exercised by another even though that other be the owner of the land at the time of the giving of the notice; that the giving of such notice by an original landowner is not binding upon his grantee, nor can the grantee rely upon

such notice for cancellation of the lease after he has acquired the land, and this last claim is the exact question presented by this record with respect to this fifteen-acre lease. Had appellant company entered upon George Gillem's land, as described in the lease contract, within a reasonable time after the giving of the notice, both George Gillem and his grantee, John C. Gillem, would have been bound by the terms of the lease and would have been powerless to have prevented the development of the whole tract (although then divided) by appellant company. On February 9, 1920, the date of the notice, George Gillem was the sole owner of the entire tract and as such was the only person entitled to exercise the option to terminate the lease contract on the failure, after reasonable notice, of appellant company to develop the property. The notice covered the entire tract and by that notice appellant company was made to know that if it did not within a reasonable time enter upon the said lease and begin to develop it for oil and gas the lease would be forfeited as to the whole of the tract. As the whole includes every part, by what course of reasoning can we reach the conclusion that the vendee of George Gillem, who took but a part of the land, could not rely upon the notice given by his predecessor in title? Could not George Gillem have taken advantage of the notice for the nullification of the lease on the whole tract, or any part thereof? If he could, why could not his grantee, to whom he conveyed all rights and interests in a definite portion of the tract, do the same as to the portion thus granted? Of course he could have ignored the notice and have continued to accept delay money, and so could George Gillem, the man who gave notice; and if he had done so he would have surrendered his right under the notice to have a forfeiture. But having come into all the rights of his brother, George Gillem, as to the fifteen acres, John C. Gillem was as much entitled, as it appears to us, to rely upon the notice given by his predecessor in title, at least to the extent of the fifteen acres, as was George Gillem with respect to the remainder of the tract not granted to his brother. Having notice that the lessor would not again receive rentals for a continuance of the lease but would require development, appellant company was under the duty to act within a reasonable time, and its failure to do so was equivalent to an abandonment and acknowledgment of nullification, and appellant cannot complain that it was not given two notices to develop the

same property. When George Gillem vested his brother John C. Gillem with all rights and title in and to the lease and royalties in and to the fifteen acres, among which rights was the one acquired by reason of the said notice to declare a forfeiture of the lease if the lessor should fail within a reasonable time to begin drilling and operating for oil and gas, John C. Gillem had the same right to declare a forfeiture of the lease as if he had been the owner at the time the notice was given and had signed the notice. We, therefore, conclude that John C. Gillem had the right and power to terminate the lease on the fifteen acres in any way which was open to his grantor under said notice, and having rejected the delay money and declared his purpose to nullify the lease contract, all right of appellant company to enter under the old lease was barred and tolled after the lapse of a reasonable time from the giving of the notice.

2. Appellant company states its claim to the oil and gas lease on the land covered by the Wayne Wright three-acre patented tract as follows:

"The Union Gas & Oil Company claims title to this tract of land by virtue of two oil and gas leases, the first executed by William H. McKenzie and wife unto A. C. Albin on the 8th day of February, 1916, and the other by George Kelly and wife to Albin on the 29th day of May, 1916, both of which leases were subsequently transferred by Albin to Millikan and Ayers, and by them to the Union Gas & Oil Company. The farms embraced by these leases are the William H. McKenzie farm on the east, and the George Kelly farm on the west, and the boundary line of the Kelly farm on the east is the boundary line of the McKenzie farm on the west. In other words, the two farms adjoin each other, and the McKenzie lease is bounded on the west by the Kelly lease, and the Kelly lease on the east by the McKenzie. There is no vacant space between the two leases; yet, notwithstanding this fact, Wayne Wright, some time after the acquisition by the Union Gas & Oil Company of the two leases aforesaid, claimed that there was a strip of vacant land between the McKenzie and Kelly farms amounting to three (3) acres, more or less, and procured and caused to be issued unto himself a patent therefor by the state of Kentucky, and after he had so obtained his patent, executed an oil and gas lease thereon in the year 1921, to one Hupp, who assigned the same to the Indian-Tex Petroleum Company."

The Auxier patent is the oldest one in that particular vicinity and covers a large boundary of land. Near it and adjoining it at one or more points is the Kelly patent, also covering a large tract, but between the two tracts is a ridge and on this ridge is woodland which has never been cleared. According to the evidence for appellant company the John B. Auxier patent is now owned by McKenzie and the Kelly patent is owned by Kelly and his grantees. Neither McKenzie nor Kelly appear to have known exactly where their lines ran between their respective tracts. Each one testified, however, that he claimed to the extent of his patented boundary which he thought extended to the line of the lands of the other, but he was not sure about this and did not intend to nor did he claim any land beyond his patented boundary. There was, therefore, no title acquired by adverse possession. Neither Kelly nor McKenzie had seen the lines run out, but about the time this lawsuit came up three or four different engineers surveyed the different lines on the Auxier and Kelly patents immediately surrounding this three-acre tract. The surveyor in the employ of the appellant company testified that there was no vacant land between the Kelly and Auxier patents found by him, but that he was not prepared to say that there was not vacant land there. However, he inclined to the view that there was not. Two other surveyors testified for appellee company, and it was the opinion of each from running the lines of the Kelly and Auxier patents that there was a narrow strip of land between the two patents and that this vacant land had been covered by the patent granted to Wayne Wright and which tract he leased to the assignors of appellee company. From examining all the evidence it reasonably appears that the Kelly and Auxier patents did not join at the point in controversy and that there was between said patents a small parcel of vacant land. We, therefore, conclude that the chancellor's finding of this fact was sufficiently sustained by the evidence and it will not be disturbed by this court.

(3) Appellant company makes the following claim with respect to the third tract:

"The Union Gas & Oil Company claims the oil and gas rights in this tract of land by virtue of a lease by W. H. Fyffe and wife to A. C. Albin on the 9th day of February, 1916, which was subsequently assigned by Albin to Millikan and Ayers, and by them to the Union Gas & Oil Com-

pany. The first year was rent free, and all the other rentals were paid to, and accepted by, Fyffe down to the 8th day of February, 1920, which would have made the next payment of rentals fall on the 9th day of February, 1921, but on the next day after he received the last rental, namely, upon the 9th day of February, 1920, he gave notice to the Union Gas & Oil Company that he would not receive any more rentals, and at the same time gave them notice that they were required to drill and develop his property.''

Appellant says that its president, in November, 1920, directed its superintendent to move a drilling rig upon the Fyffe lease and begin drilling and that in the month of January, 1921, before Fyffe leased the land to appellees' predecessor appellant's superintendent started a drilling rig to the farm of Fyffe for the purpose of beginning development but that Fyffe objected to same and declined to give his permission to appellant and its men to enter upon his land for development purposes. All this is definitely denied by Fyffe, who says he was willing and anxious at all times for appellant company to bring its drilling machinery on his farm to begin development. He is sustained in this by other witnesses. Upon this evidence the chancellor found that appellant company did not in good faith start to move a drilling rig upon appellant's farm, and upon this fact decreed a lapse of this Albin lease, and we see no reason to disturb the finding in view of our general rule that the finding of fact by a chancellor will be sustained unless against the weight of the evidence. Wilson's Admr. v. McCullough Bros., 185 Ky. 722; Jacobs' Extr. v. Meyers, 185 Ky. 594; Carter v. Shrout, 185 Ky. 729, and cases there cited.

(4) Appellant company's claim to the George Gillem 80-acres lease is set forth in its brief as follows:

''This tract of land is composed of the balance of the old Gillem home place, after George Gillem had sold to John C. Gillem 15 acres thereof, and a tract purchased by the said George Gillem from T. M. Furgerson that had been before his purchase leased by Furgerson to the Union Gas & Oil Company. The appellant company claims this fourth tract by virtue of two oil and gas leases, one given by George Gillem and wife unto A. C. Albin on the 8th day of February, 1916 (being a portion of the old Gillem home place), and the other by T. M.

Furgerson, widower, executed to the said Albin upon the same day, which leases were subsequently assigned by Albin unto Millikan and Ayers, and by them unto the Union Gas & Oil Company.

"All rentals were received by T. M. Furgerson on that portion of this tract that was acquired by George Gillem from us, up to the time he sold the same to Gillem, and Gillem received all rentals on both portions of this tract, the T. M. Furgerson part, and the residue of the Gillem home place, until the 8th day of February, 1920, and this payment carried the rental until the 9th day of February, 1921; but on the 9th day of February, 1920, the day after the receipt of this last rental, George Gillem gave notice that he would not receive any further rentals, and further gave notice to the Union Gas & Oil Company to develop his property."

It says its lease on this tract should not have been adjudged forfeited because it in good faith, in the month of November, 1920, directed its superintendent, Holland, to drill at once upon the Gillem property, and in January, 1922, pursuant to the direction given by the president, and before Gillem had made a new lease upon this tract, it offered to take a drilling machine on to the Gillem tract and begin development but that Gillem would not allow the machinery to enter on his farm. This Gillem denies, but says that he was willing at all times for appellant company to drill the lease and even urged its agents to send a drilling outfit on to his farm, but was informed he would not get a well until all the other persons who had not given notice for development had first been served by the drilling of wells upon their lands. He called witnesses to sustain him in his evidence, and the chancellor found that appellant company had not made a good faith effort to enter upon and drill the lands of Gillem, and we must adopt the finding of the chancellor in the absence of a showing that the finding is contrary to the weight of the evidence. Indeed we think under the facts of this case that appellant company was entirely too slow in moving its machinery on to the lands of George Gillem, John C. Gillem, Fyffe and Furgerson and that a much shorter period than one year from the giving of the notice would have been ample time for the company to have moved the drilling machinery on to these leases and begun development in accordance with the notice and lease contracts.

It is admitted that appellee company has a binding, subsisting oil and gas lease upon the four foregoing properties in the event that the said leases made to Albin in 1916 are invalid. Where a lessee, under a contract similar to the one under consideration, fails to begin operation for the development of the lease within a reasonable time after the lessor has given notice that he will not longer receive rentals and extend the lease but will insist upon the drilling of his lands, the leasehold will terminate as though abandoned by the lessee. It is not necessary for the lessor, in order to remove the cloud created by the lease contract from his lands to go into a court of equity and litigate the question of the validity of the lease, but the landlord being in possession and control of the lands may, after the expiration of a reasonable time, following the giving of the notice, declare such forfeiture and make a new valid lease upon his lands to another, and such granting of a new lease, in the absence of other declarations, will be regarded as a declaration of forfeiture by the lessor. Thornton on Oil & Gas, sections 175, 176, 177, 178, 179, 180, 181 & 182, pages 113 to and including 124; Alleghany Oil Co. v. Bradford Oil Co., 21 Hun. 26 (affirmed 86 N. Y. 639); Huggin v. Daley, 99 Fed. 606, 40 C. C. A. 12; Richardson v. Dorris, 12 Ky. L. R. 138; Smith v. Root, 66 W. Va. 633; Monroe v. Armstrong, note 31 L. R. A. 673, 96 Pa. 307; Bettman v. Harness, 42 W. Va. 433 (36 L. R. A. 566), 12 R. C. L. 876. Both upon reason and authority this rule seems to be one dictated by fairness and justice, for if it be held that the lessor may terminate a lease by giving to the lessee notice that he will not again receive rentals and extend the lease term but will require development of his lands for oil and gas purposes, the right of the lessee will *ipso facto* terminate with the expiration of a reasonable time from the giving of the notice and he may not thereafter enter on the premises it must follow that if he does so enter without the consent of the landlord he is a trespasser. Therefore, no court proceeding is necessary by the lessor to relieve his lands of the colorable burden of the expired lease.

For the reasons indicated the judgment is affirmed.