## Union Gas and Oil Company v. Gillem, et al.

(Decided November 18, 1925.)

### Appeal from Johnson Circuit Court.

1. Mines and Minerals—All of Tenants in Common of Oil Lease Must Unite in Action to Enforce Forfeiture Thereof.—All of tenants in common of oil lease must concur and unite in action to enforce forfeiture on account of breach of entire and indivisible covenants.

2. Mines and Minerals—Lessor in Oil Lease Held to Have Delayed Drilling Unreasonable Time.—Delay of lessor in oil lease to begin driling until more than year after notice had been given him to start drilling operations held to be unreasonable.

3. Mines and Minerals—Failure to Begin Development Terminates Oil Lease.—Failure to begin development terminates oil lease as if it had been abandoned.

4. Mines and Minerals—Agreement to Waive Development of Oil Lease on Conditions Cannot be Enforced When Conditions Not Complied With.—Agreement to waive development of oil lease on condition lessor would begin immediate development of certain other lease could not be enforced, where drilling was done on neither lease.

5.  Mines and Minerals—Evidence Held to Show Lessee was Not Es-
    topped to Declare Forfeiture of Lease.—In action to quiet title
    to oil lease, evidence held to show that actions of lessee had not
    worked an estoppel as to declare lease forfeited.

6.  Mines and Minerals—Showing of Forfeiture of Lease Held Not
    Sufficient, Unless all of Tenants in Common were Shown to
    Have Declared Forfeiture.—In action to quiet title to oil lease,
    evidence showing forfeiture of lease held not sufficient, where
    only one of tenants in common was shown to have declared
    forfeiture, and other tenants in common must be brought be-
    fore court to establish rights of parties, as they are indispensable
    parties to final decision of cause.

7.  Pleading—Allegations of Petition Held Put in Issue by Agreed
    Order, Though Not Traversed Originally.—Where an agreed order
    recited that affirmative matters in all pleadings by either party
    not heretofore responded to are traversed of record, allegations
    in petition were put in issue and denied, notwithstanding they
    were not traversed originally.

8.  Mines and Minerals—Court of Appeals May Require all Cotenants
    to be Brought Before it in Determining Action to Quiet Title of
    Oil Lease.—Where judgment was rendered for lessor in action by
    lessee to quiet title to oil lease, judgment will be reversed for
    failure to join all co-tenants, as lessor was attempting to quiet
    title by counterclaim, and it is within province of Court of Appeals
    to bring all cotenants before it, so that final and binding judg-
    ment may be entered, in view of Civil Code, section 28.

HOLT, DUNCAN & HOLT, D. L. HAZELRIGG and E. L. Mc-
DONALD for appellant.

O'REAR, FOWLER & WALLACE, WHEELER & WHEELER and
S. S. WILLIS for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Revers-
ing.

On the 8th day of February, 1916, the appellees, W.
L. Gillem and Esta Gillem, his wife, who were the owners
of a certain tract of land in Johnson county, executed an
oil and gas lease thereon to A. C. Albin.   By mesne as-
signments this lease has passed into the ownership of the
appellant, Union Gas and Oil Company.   The lease was
executed for the nominal consideration of $1.00 and con-
tained the following provisions:

"To have and to hold the above premises ten
years or so long as gas or oil is found in paying
quantities on said premises on the following condi-
tions: In case no well is commenced within twelve
months from this date, then this grant shall be null

and void unless second party shall thereafter pay at the rate of ten cents per acre for each year drilling is delayed.''

Up to February 9, 1920, no well had been drilled upon the premises but the prescribed rentals had been paid. On this day Gillem and his wife gave written notice to the Union Gas and Oil Company, then the owner of the lease, demanding that development be begun at once, stating that if it was not begun within a reasonable time suit would be brought to cancel the lease, and giving notice that no further rentals would be accepted.

On July 23, 1920, Gillem and his wife conveyed to Z. M. Moore ''the equal undivided one-half interest in and to the oil and gas'' upon the premises in question. In this deed it was provided: ''It is understood that this tract of land is under lease for oil and gas to the Union Gas and Oil Company.'' No effort was made by the appellant to begin development of the lease in question until May 25, 1921. In the meantime and on May 16, 1921, Z. M. Moore and her husband conveyed to Mrs. Betty Lou Swope ''the one-fourth of their interest in the oil and gas'' on the Gillem land. This deed recites: ''It is understood that this conveyance grants to said Swope a one-fourth of the interest owned by the first parties in said property, it being one-sixty-fourth (1/64) of the royalty interest in said property, also this tract of land was leased by the Union Gas and Oil Company.'' This deed was recorded on May 19, 1921. On May 18, 1921, Gillem and his wife executed a ''cap'' lease on this property to C. M. Root and others, which by mesne assignments has come into the ownership of the appellee, Indian-Tex Petroleum Company. This ''cap'' lease was put to record on May 23, 1921. On May 25, 1921, appellant entered on Gillem's property and made a location for an oil well which it began drilling on July 23, 1921. The well was completed on September 13, 1921. A second well begun October 15, 1921, was finished December 15, 1921. When appellant began the development of Gillem's land in the summer of 1921, the latter made vigorous protest against its entering upon the premises or doing any work thereon, because, as he claimed, its lease had lapsed and become void for failure to develop the property within a reasonable time after his notice of February 9, 1920. His protests and objections being without avail, he brought suit in the federal court to en-

join appellant from further prosecuting any work on his land. This suit dragged along for about a year, when Gillem dismissed it and at once on May 9, 1922, brought suit in the state courts to enjoin appellant's workmen engaged in the development of the lease from further trespassing on his property. This last suit resulted in a judgment entered on July 18, 1923, granting Gillem the relief he sought. The subsequent history of this suit may be found in Shannon v. Gillem, 212 Ky. —, — S. W. —, this day decided.

Meanwhile, on December 20, 1921, the "cap" lease theretofore made by Gillem to Root and others was altered by the insertion therein of the names of the Moores and Swopes as additional lessors. Mrs. Swope and her husband and Mrs. Z. M. Moore then on that day signed and acknowledged the "cap" lease as so altered, but this "cap" lease was not again put to record until June 14, 1922.

As stated, in the fall of 1921, appellant had completed two wells on the Gillem land and was pumping oil from them, which was delivered to the Cumberland Pipe Line Company. Appellee Gillem, Moore and Swope executed and delivered to the Pipe Line Company division orders relative to their respective shares in the oil delivered. The division order signed by Gillem, however, had written upon it that it was without prejudice to his claim to all of the oil the Union Gas and Oil Company was taking from his premises. The division orders of Moore and Swope were, so far as this record shows, without such reservation. In May, 1922, the appellee, Indian-Tex Petroleum Company, went upon Gillem's land under the "cap" lease mentioned and began drilling. It has since brought in a number of wells upon this property. Thereupon on June 13, 1922, appellant brought this suit against Gillem and his wife, Z. M. Moore and Betty Lou Swope and their husbands, Root and his associates, and the Indian-Tex Petroleum Company, wherein it prayed that the "cap" lease be cancelled as a cloud upon its lease; that it be quieted in the possession and enjoyment of said lease; that the defendants, now appellees, be enjoined from drilling or trespassing upon said lease; and that they be further enjoined from interfering with the appellant's development of the same. All of the defendants, except the Moores and the Swopes, filed a joint answer and counterclaim. The Moores and Swopes have never been summoned, have taken no part

and have never appeared in this litigation.    The answering defendants contended that at the time Gillem and his wife made the "cap" lease on May 18, 1921, the original lease of February 8, 1916, had lapsed and become void, because of nondevelopment.    They further claimed that the original lease was void for want of mutuality and that the judgment in the case of Shannon v. Gillem, above referred to, operated as *res adjudicata* of the proposition that the lease had lapsed and become void for nondevelopment because the only issue in that suit was the validity of such lease and appellant had taken charge of that litigation, paid its expenses, furnished the employees with counsel, produced the witnesses and had entire control of the defense, for which reason, being the real party in interest, it was bound by the judgment.    The appellant denied that the lease had lapsed and become void for nondevelopment within a reasonable time after the notice to develop had been served upon it, and further relied on a waiver on the part of Gillem to so develop because, as it said, Gillem had in the fall of 1920, agreed to extend the time within which it should begin development on his property, provided it began development on his sister's property, known as the Martha Kelly lease, and this it had done.    Appellant also claimed that Gillem had aided and assisted it in the location and drilling of its two wells, for which reason he was now estopped to claim a forfeiture as he was also, because he had signed the division orders above referred to, thus ratifying and confirming the lease. As to the Moores and Swopes, appellant claimed that by the deed of Z. M. Moore to Betty Lou Swope, its lease was recognized and confirmed and that by their division orders, they had ratified the said lease and were now estopped to claim it had lapsed or become forfeited.    Appellees traversed the claims of appellant.    On these issues the court adjudged that the original lease had elapsed and was void; that there had been no waiver on the part of Gillem nor was he estopped to claim the forfeiture.    On the counterclaim of the answering appellees, wherein they sought relief against appellant like that sought by appellant against them, the court awarded them the relief they asked.    From that judgment this appeal is prosecuted.

By the conveyances of Gillem to Moore and Moore to Swope of the undivided interests "in and to the oil and gas," these parties became tenants-in-common of these minerals.    At the time Gillem made his conveyance

to Moore, not enough time had elapsed since his notice to appellant to develop to work a forfeiture of appellant's lease.  Thereafter, appellant occupied the position of a lessee of Gillem and Moore and later Swope as tenants-in-common.  The general rule with regard to forfeitures of leases where the lessors are tenants-in-common, is that all the tenants-in-common must concur and unite in an action to enforce the forfeiture on account of the breach of entire and indivisible covenants.  Such is the implied covenant in oil leases like the one before us to develop the lease on notice.  Cadillac Oil and Gas Co. v. Harrison, 196 Ky. 290, 244 S. W. 669.  There seems to be an exception to this rule with regard to the covenant to pay rent and possibly to make repairs, but aside from these possible exceptions, the general rule is as stated.  The reason for the rule is well expressed in the case of Howard v. Manning (Okla.), 192 Pac. 358, where the court said:

"Neither tenant in common has, by virtue of his relationship to his co-tenant in common, any authority to act as agent for his companion in either giving a lease or enforcing a forfeiture thereof.  Freeman, Cotenancy & Partition, section 180; 38 Cyc. p. 105; Rotzien.v. Merchants' Loan & T. Co., 41 S. D. 216, 170 N. W. 128; Adams v. Yukon Gold Co., 163 C. C. A. 382, 251 Fed. 226.

"Now, if the death of the lessor operates to apportion among the heirs the covenant in question, then a number of the tenants in common less than all can enforce a forfeiture of the lease in so far as they are concerned, leaving it valid and binding on the other tenant or tenants in common not concurring in the forfeiture, and thus create a situation where the lessee becomes a trespasser and responsible for damages to certain owners and entitled to occupy the premises as to certain other owners.  It is well settled that a lessee cannot set up his own default in order to terminate the lease or escape liability under its provisions.  If he defaults in keeping covenants in the lease, and thus incurs a forfeiture, it is not for him to enforce the forfeiture or rely upon it as terminating the lease.  The forfeiture clause is for the benefit of the lessor, and he may elect to waive the forfeiture.  The breach of the condition for which a forfeiture is expressly provided does not automatically terminate the lease.  There must be

some act upon the lessor's part evidencing his intention to treat the lease as actually forfeited. He may do this by a declaration of forfeiture or by re-entry. The breach of the covenant makes the lease voidable, not at the election of the lessee, but only at the election of the lessor, and any act on the part of the lessor, by word or deed, with knowledge of what has been done, which signifies his intention to affirm the lease, is conclusive evidence of a waiver of the forfeiture. Camp v. Scott, 47 Conn. 366; Croft v. Lumley, 6 H. L. Cas. 705, 10 Eng. Reprint, 1472, 27 L. J. Q. B. N. S. 321, 4 Jur. N. S. 903, 6 Week, Rep. 523; Blyth v. Dennett, 13 C. B. 178, 138 Eng. Reprint, 1165, 22 L. J. C. B. N. S. 79; Bowers, Waiver, sections 52 to 61, inc.; Gradle v. Warner, 140 Ill. 123, 29 N. E. 1118; Farlow v. Ellis, 15 Gray 229 (Mass.); Nagel v. League, 70 Mo. App. 487; Allen v. Dent, 4 Lea (Tenn.), 680; Planters Ins. Co. v. Diggs, 8 Baxt. (Tenn.), 568; 1 Underhill Land. & T. p. 648; Lewis v. Ocean Nav. & Pier Co., 125 N. Y. 341, 26 N. E. 301.

"If the right to enforce a forfeiture accrues, and a part of the tenants in common are allowed to elect to enforce the forfeiture, then the lessee is placed in the inequitable position of being bound by the lease as to part of the tenants and discharged by a part, which means that the lessee is still liable as a lessee to some of the tenants in common, although he cannot enjoy any of the benefits of his lease without becoming a trespasser and liable for damages to the other owners of the land."

This case is also reported in 12 A. L. R. 819, and to it is appended a note collecting what authorities there are upon the subject. Among them is the Louisiana case of Cochran v. Gulf Refining Co., 139 La. 1010, 72 So. 718, very like the instant case except in the manner in which the tenancy-in-common was created. This case followed the rule above laid down and held that all the tenants-in-common must join in the election to declare a forfeiture for failure to carry out the implied covenant to develop the oil lease.

Applying this principle to the case before us, we find that appellant did not begin development on the Gillem land until May, 1921, which was an unreasonable time after the notice of February 9, 1920. It was expressly so held in the two cases of Union Gas and Oil Company

v. Indian-Tex Petroleum Company, 199 Ky. 384, 251 S. W. 1008, involving the lands of George Gillem, a brother of appellee Gillem, and Union Gas and Oil Company v. Indian-Tex Petroleum Co., 203 Ky. 521, 263 S. W. 1, involving the lands of John Gillem, another brother. The facts, circumstances and dates in these two cases were exactly the same as in the case at bar, and we there held that the leases had not been developed within a reasonable time after the notices had been served on appellant. Had Gillem remained the sole lessor, it cannot be doubted that he would have been entitled to declare the forfeiture he did. In the case in 199 Ky. 384, *supra*, we said that the failure to begin development terminates a lease as though it had been abandoned; that it is unnecessary for the lessor to bring suit in equity to question the validity of the lease, and that a "cap" lessee under a "cap" lease executed after the expiration of a reasonable time for such development is entitled to the oil and gas as against the prior lessee. Gillem never waived his right nor ever did anything to estop himself to insist on its assertion. It is true that while Gillem was ill with typhoid fever in the fall of 1920, his brother, John Gillem, who was then conducting his affairs for him, did tell appellant that Gillem would wait for development on his property if appellant would develop their sister's property known as the Martha Kelly lease. But a careful reading of the evidence shows that this offer was conditioned on appellant beginning at once, with a rig it then had idle, the development of this Martha Kelly lease. Instead of doing this, appellant moved this rig over to another lease and did not begin the development of the Martha Kelly lease until late in the spring of 1921. This was by no means a compliance with the condition of the alleged waiver and hence the appellant is in no position to rely upon it. So far as the estoppel is concerned, after appellant began its location and drilling on Gillem's property, he did everything a man could do to warn it and apprise it of the fact that it no longer had a lease or any rights in the property. He brought suit in the federal court to stop appellant. He forbade it using his property. He later brought suit in the state courts against its employees and got judgment there. In the division orders he signed he clearly stated that this was without prejudice to his right to claim the balance of the oil. We utterly fail to find anything in this record to establish a waiver of the notice

Gillem had served on appellant or an estoppel to claim its benefit.

But Gillem was not the sole lessor of appellant. Moore and Swope were his tenants-in-common. While it may be true that these co-tenants had a right to rely on and take advantage of the notice Gillem had served on appellant in February, 1920, Cf. Union Gas and Oil Co. v. Indian-Tex Petroleum Co., 199 Ky. 384, 251 S. W. 1008, yet this was a right personal to them which they could exercise or not as they saw fit. So far as appellant's pleadings and proofs are concerned, it would appear that by the execution of the conveyance between Moore and Swope in May, 1921, just a few days before appellant located its first well and a few weeks before it began drilling the same, and by the execution of the division orders by Moore and Swope without reservations, they acknowledged, ratified and confirmed appellant's lease just before and just after it drilled the two wells it did, and that thereby they did not elect to take advantage of Gillem's notice as we have seen. Gillem alone could not declare a forfeiture. All the tenants-in-common had to join in such election. Appellant by this action seeks to quiet its title to its lease. It made Moore and Swope parties, but they were never summoned and have never answered. Had they been before the court, it may be that they would have put in issue appellant's claims regarding their ratification of the lease. At least they were indispensable parties to a final decision in this cause. If the proof should show they stood by Gillem's notice and did not ratify or confirm appellant's lease, then it stands forfeited. If, on the other hand, they did ratify or confirm appellant's lease, Gillem as one tenant-in-common, was powerless alone to declare such forfeiture and appellant was entitled to have its title quieted. But until Moore and Swope are brought before the court, or until it is shown they have assisted or directed the defense, no judgment can be entered binding upon them. A judgment against their alleged cap lessee could not affect them. Prewitt v. Wilborn, 184 Ky. 638, 212 S. W. 442. For appellant's title to be quieted, we must know whether or not these tenants-in-common stood together. It is therefore apparent that this case must be reversed in order that Moore and Swope may be brought before the court. The appellees' plea of *res adjudicata* arising out of the Shannon v. Gillem case *supra* cannot prevail here as Moore and Swope were not parties to that litigation and

took no part in it.  No right as between appellant and Moore and Swope was there adjudicated.  Gillem's election to declare the forfeiture was of no avail unless Moore and Swope added thereto their election.  Hence it is plain that the Shannon v. Gillem case has no effect other than to establish Gillem's election, if it does, and we have seen that the proof in this case, aside from the Shannon v. Gillem case, established that proposition anyway.

As it is necessary for Moore and Swope to be brought before the court before it can quiet appellant's title or grant the appellees the like relief on their counterclaim, the judgment in this case is reversed, with instructions to proceed in conformity with this opinion.

RESPONSE TO PETITION FOR REHEARING, PER CURIAM.

In a petition for rehearing filed herein, the appellees, Gillem and Indian-Tex Petroleum Company, insist that in the state of the record in this case, the deed from Gillem to Moore must be construed as granting merely a royalty interest, instead of being held to be a conveyance of the minerals.  The petition in the original suit avers that the deed in question was a conveyance, but goes on to say that "it was the intention of the said William and Esta Gillem, notwithstanding the language quoted from their deed aforesaid, . . . to convey only the undivided one-half of the royalty," etc.  Appellees say that as they did not traverse this allegation concerning the intention of the Gillems nor a later allegation that Moore and Swope were the assignees of an undivided one-half of the royalty and no proof was offered concerning them, such allegations must be accepted as true.  Appellees are in error, though, when they say they did not traverse these allegations.  By an agreed order entered on the 25th of July, 1924, and found on page 449 of the record, it is recited: "The affirmative matters in all pleadings by either party to this action not heretofore responded to are now traversed of record."  It thus appears that these allegations were put in issue and that the appellees *denied that* the Gillem deed, if executed, was an assignment of royalties and not a conveyance of the minerals.  Further, it will be observed that the petition, if the pleader had that right, did not seek a reformation of the conveyance to conform to the alleged intention of the grantor, nor did it allege that Moore, the grantee, intended the deed to be other than a conveyance of the min-

erals. We adhere to the construction given this deed in the original opinion. See Gillespie v. Blanton, — Ky. —, — S. W. —. (Jan. 26, 1926.) But it is urged that as appellant was seeking to quiet its title, it devolved upon it to bring Moore and Swope before the court, and as it failed to do so, its action should have been dismissed. It must be remembered, however, that the appellees, Gillem and Indian-Tex Petroleum Company, were by counterclaim also seeking to quiet their title. It then became as much their duty to get Moore and Swope before the court as it was that of the appellant. As the court was called upon to settle the question of title and no decision it would make would be binding on Moore and Swope, and as it was necessary that some binding decision on Moore and Swope be made in order to finally quiet the conflicting claim of the parties to this litigation, it was and is plainly within the province of the court to require that Moore and Swope be brought before it to the end that a final and binding judgment may be rendered. Cf. Civil Code, section 28.

The petition for a rehearing is overruled.