**CARLSON et al. v. KENTUCKY RIDGE COAL CO.**

No. 605.

United States District Court
E. D. Kentucky, London.

June 1, 1953.

claimed by Asher Coal Mining Company. In 1934 the right to mine the coal underlying this and other adjoining tracts was granted by Asher Coal Mining Company to the defendant, Kentucky Ridge Coal Company. A substantial quantity of coal was removed from the leased area by the defendant and royalty thereon was paid to the Asher Company.

On July 3, 1944, the plaintiffs, acting jointly, also entered into a lease contract, by the terms of which they granted to the defendant for a period of thirty years the right to remove the merchantable and mineable coal from a large area of land lying adjacent to the lands of Asher Coal Mining Company. The result of the litigation was the termination that the 90 acre tract here involved was part of the land inherited by plaintiffs from their mother and was within the boundary leased to defendant by the plaintiffs.

Due to its mistaken belief that the 90 acre tract was a part of the lands held under the Asher lease, the defendant had no separate records of the coal mined from that particular tract. After considerable negotiations following the litigation, the plaintiffs and defendant finally agreed that 150,000 tons fairly represented the tonnage taken from the 90 acre tract prior to the termination of the litigation, and, in settlement and satisfaction of the plaintiffs' claim on account thereof, the defendant would pay royalty of 10¢ per ton, the rate provided in the 1944 lease from plaintiffs. See order upon pre-trial conference entered herein on October 8, 1952.

Claude P. Stephens and Jesse K. Lewis, Lexington, Ky., for plaintiffs.

Lay & Knuckles, Pineville, Ky., Gambill, Dudley & Cox, Terre Haute, Ind., for defendant.

FORD, Chief Judge.

Pursuant to the decision in Carlson v. Asher Coal Mining Co., 6 Cir., 172 F.2d 243, the plaintiffs Hazel Carlson and Grace Harber were adjudged the owners, as tenants in common, of a tract of land of approximately 90 acres with which we are concerned in this action.

Prior to that litigation, which was instituted in this court in 1946, the 90 acre tract had been for a number of years

Among the numerous provisions of the lease of July 3, 1944, paragraph 4 obligated defendant to pay the stipulated royalty in this manner: "* * * one-half to Grace Harber and the other half to Hazel Carlson, by separate checks mailed to them at their respective addresses"; and paragraph 16 provides: "In the event the second party fails for a period of as much as sixty (60) days to pay the royalty herein provided, then *first parties may at their option,* upon thirty (30) days written notice, declare this lease forfeited, null and void, re-enter and take possession without further notice or

demand, and all rights of the second party hereunder shall by reason of such forfeiture be terminated, provided such default be not remedied within the period of thirty days provided for in such notice." (Italics added.)

This action was instituted in the names of both Mrs. Carlson and Mrs. Harber, the complaint alleging that the defendant had failed and refused to comply with the contract in respect to payment of the stipulated royalty. Judgment is sought declaring defendant's contract rights forfeited, the lease terminated and for other incidental relief.

On March 11, 1952, the plaintiff Grace Harber asked leave "to withdraw and strike her name from the complaint in this case, as a party plaintiff herein". On April 1, 1952, her request was granted. However, before disposition of a motion filed by the defendant challenging the right of Mrs. Carlson to maintain the action in the absence of Mrs. Harber, she filed an amended complaint seeking to have Mrs. Harber made a party defendant. Several months later Mrs. Harber moved the court to set aside the order striking her name and expressed the desire to prosecute the action as one of the plaintiffs. Her motion was granted.

### Findings of Fact

1. During the period from July 1949 until February 1950, the defendant in good faith engaged in repeated and persistent efforts to have the terms of the agreement for adjustment of the claim for royalty upon the coal taken from the 90 acre tract reduced to writing so as to definitely and finally bring to an end all controversy in respect to that matter as between plaintiffs and defendant as well as between plaintiffs and Asher Coal Mining Company, which company, as a result of its litigation with plaintiffs in the case above referred to, was also rendered liable to plaintiffs. In July defendant prepared and mailed to plaintiffs for their approval a writing setting out the agreement and, by its letter, assured them that checks covering their respective shares of the agreed royalty with interest would be sent them upon their execution of the proposed written agreement. For some reason the writing was not satisfactory to plaintiffs, but it appears that the matter was worked out satisfactorily with Mrs. Harber and she finally accepted the payment to her. Mrs. Carlson continued obdurate and on August 8th defendant mailed like checks payable to her to the Continental Illinois Bank and Trust Company of Chicago for its delivery to her upon her execution of a substituted writing evidencing the agreed settlement. Notice of this action was duly given Mrs. Carlson. She declined to accept the tendered checks and again refused to sign the proposed writings. See Carlson Exhibits 1–6, inclusive, set out on pages 20–43 of Reporter's transcript.

2. On February 27, 1950, Mrs. Carlson wrote the defendant declaring her election to terminate and forfeit the lease for failure to pay royalties "provided the default was not remedied within a period of thirty days from that date." See Carlson Exhibit No. 7. It is noticeable that Mrs. Harber did not join in this declaration of forfeiture. In further efforts to adjust their differences, correspondence between defendant and Mrs. Carlson was continued and finally led to Mrs. Carlson's letter of November 16, 1950, addressed to Walter Bledsoe & Co., a corporation of which the defendant is a wholly owned subsidiary (defendant's Exhibit "J"), in the following words:

"November 16, 1950

"Walter Bledsoe & Company
  Merchants National Bank Bldg.,
  Terre Haute, Indiana

"Attn: Mr. W. D. Webster

"Re: Kentucky Ridge Coal Company
    Royalty Payments

"Dear Sir:

"In reference to numerous correspondence heretofore received with reference to the above styled matter, please be advised that you may send me your draft covering the $7500.00 royalty, plus interest to date of the draft, representing payment in full of my one-half undivided interest on the 150,-000 tons of coal removed prior to March 1,

374

1949, on the Jacob Woolum so-called ninety acre tract.

"You may put on your draft, payment in full for the royalties specified above.

"Yours very truly,
(Signed) Hazel Carlson."

This letter was followed by the defendant's letter to Mrs. Carlson of November 27, 1950 (defendant's Exhibit "K") and then by its letter to her of December 29, 1950, enclosing its check for $8,486.57. See defendant's Exhibits "L" and "M" on pages 122 and 123 of the Reporter's transcript. Though the letter of December 29th was duly mailed to her proper address, Mrs. Carlson testified she did not receive it. It was never returned to defendant as undelivered mail.

3. On January 13, 1951, upon the letterhead of her attorney Fritz Krueger, of Somerset, Ky., Mrs. Carlson wrote the defendant as follows:

"January 13, 1951

"Kentucky Ridge Coal Company,
709 Merchants Bank Building,
Terre Haute, Indiana

"Gentlemen:

"By reason of your failure to comply with the lease dated July 3, 1944, more particularly your default in making payments under paragraph # 4 thereof, you are hereby notified that your lease is hereby terminated.

"I do not desire to sell you coal lying under this property after this date.

"Yours very truly,
(Signed) Hazel Carlson.
"cy to Walter Bledsoe Co.
Terre Haute, Indiana."

See Carlson Exhibits 9a. Mrs. Harber did not join in this letter.

4. On February 9, 1951, well within the thirty day grace period after Mrs. Carlson's letter of January 13th, the defendant again mailed to her its checks covering the royalties in question. See Carlson Exhibits 11a, 11b and defendant's Exhibits "B", "C", "D", "E", "F" and "G". She admits having received this check but claims it did not reach her prior to the expiration of the thirty day period. It was retained until September 12, 1951, when it was returned by her attorney, Mr. Stephens. See Defendant's Exhibit "Q".

## Conclusions of Law

■ 1. The court has jurisdiction of the parties and the subject matter of this action. 28 U.S.C. § 1332.

■ 2. Contract provisions for forfeiture of valuable rights or interests are regarded with such disfavor that when sought to be applied they are strictly construed against parties seeking to invoke them. As said by Mr. Justice Swayne in National Bank v. Matthews, 8 Otto 621, 98 U.S. 621, 626, 25 L.Ed. 188, "A court of equity is always reluctant to the last degree to make a decree which will effect a forfeiture." This rule seems especially applicable where the alleged default is merely in respect to timely payment of rent or royalty if payment is made or in good faith tendered before loss or substantial damage is suffered on account of the delinquency. In such cases the courts usually proceed upon the idea that the parties regard payment of the obligation as the primary object to be attained and treat provisions for forfeiture as incidental and intended principally as a means of assuring payment. Moreover, the burden rests upon the party invoking forfeiture to clearly show that to enforce so harsh a remedy is justifiable upon equitable principles. Wilson v. Jones, 1 Bush. 173, 64 Ky. 173; Hogg and Pluto Coal Co. v. Forsythe, 198 Ky. 462, 468, 469, 248 S.W. 1008; Commonwealth v. Browm, 199 Ky. 753, 754, 252 S.W. 104; Paducah Home Oil Co. v. Paxton, 222 Ky. 778, 780, 781, 2 S.W.2d 650, 56 A.L.R. 797; Roberts v. Babb, 282 Ky. 151, 137 S.W.2d 1112; 32 Am.Jur. pp. 757, 761, §§ 894, 898; Restatement of the Law of Contracts, p. 447, § 302.

3. Under the terms of the contract of July 3, 1944, a breach of the conditions set out in paragraph 16 does not automatically terminate the lease. It is expressly provided that forfeiture may be effected by declaration thereof made by and at the option of "first parties". Since neither of the declarations herein relied upon was the

act of both parties, it is questionable whether under a strict application of the terms of the forfeiture provision any such declaration by only one of them is within the option. Union Gas & Oil Co. v. Gillem, 212 Ky. 293, 298, 299, 279 S.W. 626. The decision of this case, however, need not rest upon the answer to this question. It is referred to only for the purpose of indicating the anomalous position in which the defendant would have been if it had acted in recognition of the termination of its contract by Mrs. Carlson alone. Union Gas & Oil Co. v. Gillem, supra.

4. When on December 29, 1950, the defendant mailed to Mrs. Carlson its check for the full amount of the royalty due her, with interest, it complied with her request by letter of November 16, 1950. The obvious purpose and effect of that letter was to waive and retract her prior declarations of forfeiture. Mailing of the check was in accordance with the provision of the contract fixing the manner of payment of the royalty. For the same reason, Mrs. Carlson's letter of January 13, 1951, purporting to again declare forfeiture was ineffective for the reason that defendant's check covering her share of royalties was again mailed to her on February 9, 1951.

5. The evidence is clear that defendant desired to pay the royalty agreed upon and in good faith made every reasonable effort to do so. Mrs. Carlson's reasons for declining to sign the writings submitted to her and for refusing to accept the checks repeatedly tendered her seem frivolous and untenable.

6. The facts and circumstances disclosed are insufficient to entitle plaintiffs to the forfeiture which they seek, and their claim for such relief should be denied.

Defendant asserts that it now is and at all times has been ready, able and willing to pay all royalties due plaintiffs, as to the amount of which the record discloses no controversy. Nevertheless, this case should be retained upon the docket for such further orders and adjudications as may be found necessary and appropriate in connection with the accounting.

However, there is no just reason for delay in respect to the claim as to forfeiture and, in accord with Fed.Rules Civ. Proc. Rule 54(b), 28 U.S.C.A., it is ordered and directed that final judgment upon that claim be now entered, in conformity herewith.